THEIS and others, Respondents, vs. DURR and others, imp., Appellants.

*October 3—October 24, 1905.*

*Corporations: Powers: Stockholders: Liability for subscriptions to stock: Satisfaction: Capital stock: Reduction: Courts: Equity jurisdiction: Ultra vires: Procedure: Judgments.*

1. The liability to pay a subscription indebtedness for stock in a corporation can only be rightfully satisfied by payment according to the subscription contract.
2. Reduction of authorized and subscribed for capital stock cannot be accomplished except by voluntary surrender by subscribers *pro rata,* or some method which will not prefer one stockholder over another.
3. Corporate power in regard to reduction of authorized and subscribed for capital stock does not authorize an arbitrary cancellation of stock, or cancellation of a subscription liability for stock, without in some proper manner treating all stockholders with like favor.
4. A court of equity cannot supervise or revise corporate action within the scope of the corporate power where there is no bad faith in the matter; only error of judgment.
5. In such matters the members of the corporation, as to authority lodged with them, and the board of directors in the field where that is the governing body, are supreme within the limits of honest administration and of the boundaries of discretion.

6. But where the act of either such body, though lawful in itself, is designed to accomplish some illegitimate object—the main-spring of the transaction is some ulterior motive,—and the re-sult, if permitted to operate, will be injurious to the corporation or a member not concerned in the transaction, such a member may successfully invoke equity jurisdiction for protection of the corporation when the proper officers will not do it.

7. Where, in proceedings to reduce the capital stock of a corpora-tion, the formal resolution voted upon and certified as required by law did not disclose that its real object was to deprive mi-nority stockholders of their rights to full-paid stock and to re-lease the majority from stock-subscription liabilities, a subse-quent resolution instructing the board of directors how to carry out the reduction of the stock is *held* to disclose that object.

8. If stockholders by combining a ruling majority exercise a corpo-rate power with bad motives to the pecuniary loss or prejudice of the corporation and the minority stockholders, the wrongful use of power, as well as the mere consequence thereof, is open to judicial investigation and redress.

9. The authority to reduce capital stock is limited by its purposes. When it is exercised clearly for an illegitimate purpose, espe-cially when such purpose is fraudulent, the act is void.

10. Where those in control of a corporation and who had not entirely paid up their stock subscription undertook to reduce the capital stock, in form proceeding under a statute authorizing reduction of capital stock, the minority stockholders, whose stock was full paid, not consenting to such reduction, a judgment declar-ing the whole proceedings void and directing their cancellation of record is not prejudicial to the wrongdoing stockholders.

APPEAL from a judgment of the circuit court for Milwau-kee county: LAWRENCE W. HALSEY, Circuit Judge. *Af-firmed.*

This was an equitable action to annul proceedings of the majority of the stockholders of the defendant corporation, re-ducing its authorized capital stock for the special advantage of those who had not paid in full their subscriptions therefor.

The issues and the nature of the evidence, so far as neces-sary to the questions raised upon the appeal, are indicated by this summary of facts found by the court: November 3, 1897, plaintiffs *G. Podoll* and *H. W. Theis,* with the defendants C. J. Fox, D. H. May, and one C. L. Clason as the parties

of the first part, contracted with the defendants *Emil Durr* and *W. D. Halsted,* the second parties, to this effect: The former, who were the owners of a patent process for making pneumatic tires for vehicles, vested in the latter and such others as they might associate with them a thirty-day option to acquire, in a specified manner, a òne-half interest in such patent process and the manufacturing plant to be established to produce tires pursuant thereto. The second parties for themselves and their associates agreed to proceed at once to equip a plant, in or near the city of Milwaukee, for manufacturing such tires, and to enlarge the plant from time to time or otherwise provide for supplying the trade. It was mutually agreed that upon the acceptance of the option by the second parties they would join with the first parties in organizing a corporation with an authorized capital stock of $40,000, divided into 400 shares of $100 each, and subscribe for one half such stock and pay therefor the full face value thereof as fast as the corporation required the same for its business, and the second parties would subscribe for the other half of the stock and pay therefor by conveying their said patented invention to the corporation for the consideration of $20,000. The second parties in due time exercised their option. A corporation was accordingly organized as agreed upon. *Podoll,* Fox, May, and *Theis* each subscribed for forty shares, Clason subscribed for twenty-five shares of the stock, and L. L. Caufy was permitted to join and subscribe for fifteen shares thereof, making the half to be paid for with the patent right. The second parties and others associated with them, including defendants *Durr, Halsted, Benzenberg, Spence,* and *Joys,* subscribed for the other half of the stock, agreeing in accordance with the aforesaid contract to pay therefor. At a corporate meeting of such subscribers a resolution was unanimously adopted authorizing and directing the purchase of said patent right for the sum òf $20,000. The purchase was accordingly made, the property being ac-

cepted by the corporation as full payment for the stock sub-
scribed for by the said first parties. Certificates were duly
issued therefor. The other subscribers paid into the corpo-
rate treasury forty per cent. of their indebtedness and re-
ceived certificates of stock for the amount thereof. C. L.
Clason assigned in trust twenty shares of his stock to L. L.
Caufy, certificates of stock being issued to the latter and
the stock accordingly transferred on the books of the cor-
poration as if he were the owner thereof. The trust agree-
ment was verbal. Thereafter Caufy assigned his certificates
in blank to Clason. Before the commencement of this action
Clason sold such stock to *William H. Momsen,* who applied
to have the same transferred to him upon the books of the cor-
poration and a new certificate issued therefor. Such demand
was made after the proceedings to change the authorized cap-
ital stock. The demand was refused. The said second par-
ties did not establish a manufacturing plant as they agreed
to do. The corporation supplied the trade with its patented
device by procuring the manufacture of tires by the special
process. It now has a contract with a concern to manufacture
and sell tires, using said patented process on the royalty plan.
Three of those who were indebted upon subscriptions for
stock and two persons who held full-paid stock composed the
board of directors for the first year. Thereafter it was com-
posed of four of the former and one of the latter. The debtor
members so controlling the corporate affairs neglected and re-
fused to make any calls upon stock subscriptions although the
corporation needed money to carry on its business. Instead
of making such calls they borrowed money against the pro-
test of the director who held full-paid stock. Only forty per
cent. has been paid upon any of the subscriptions for stock
made by such second parties or their associates. Prior to the
13th day of January, 1903, the holders of full-paid stock in-
sisted upon the others paying the sixty per cent. due thereon,
and the latter refused upon the ground that the former had

not paid in full for their stock, except in form. On said date, at a meeting of the stockholders then held, the debtor sub-scribers, who still insisted upon having some relief from their agreement to put their liability for $20,000 in money against the said patent right, proposed the passage of a resolution reducing the stock of the corporation sixty per cent. with a view of thereby creating a basis for extinguishing their sub-scription indebtedness and making a sixty per cent. reduction in the stock held by the others. The resolution was lost, but at an adjourned meeting it was carried by the necessary two-thirds vote. The form of the resolution was as follows:

"Be it resolved by the stockholders of the Milwaukee Punc-ture Proof Tire Company that the capital stock of said cor-poration is hereby reduced from forty thousand dollars ($40,000) to sixteen thousand dollars ($16,000), and that article 3 of the articles of incorporation be and the same is hereby amended so as to read as follows: 'The capital stock of said corporation shall be sixteen thousand dollars, which shall be divided into one hundred and sixty (160) shares of one hundred dollars each.' "

The articles of incorporation contained a provision for the amendment thereof in accordance with the statutes. When the resolution was adopted twenty shares of stock voted by L. L. Caufy was required to make the necessary two-thirds vote. He was the holder of the stock of record, but the owner was C. L. Clason, as before stated. Neither of the plaintiffs at any time consented to the reduction of the capital stock as proposed or to a release of the debtor stockholders. After the passage of the resolution and compliance with statutory forms for reducing the capital stock, the corporation, acting by its board of directors, composed as aforesaid, in the main, of persons who were designed to be beneficiaries of the pro-ceedings complained of, sent to each stockholder a letter con-taining these words:

"Pursuant to the resolution of the stockholders of the Mil-waukee Patent Puncture Proof Tire Company, adopted on

the 16th day of January, 1903, at its annual meeting, the
articles of incorporation of said corporation have been duly
amended reducing the capital stock of said corporation from
$40,000 to $16,000. You will therefore please present your
certificates of stock in said corporation on or before March 1st
for cancellation and for the reissue of the proper number of
shares of stock to you in accordance with the resolution so
passed diminishing the capital of said corporation."

None of the plaintiffs complied with such request. Before
the commencement of this action they caused a demand in
writing to be made upon the directors of the corporation to set
aside all proceedings theretofore had with a view to reducing
the authorized stock of the corporation, and to proceed to call
the $12,000 due upon stock subscriptions and collect the same,
asserting as a reason therefor that the debtors had for five
years refused to recognize any liability in the matter. The
demand was refused.

Upon the facts stated the court decided as matters of law
that the subscribers to the capital stock of the corporation who
paid therefor by a conveyance of the patent rights as con-
templated in the preliminary contract, became thereby own-
ers of 200 shares of such stock, fully paid, the same in all
respects as if $20,000 in cash had been rendered therefor;
that the attempted reduction in the authorized capital stock
to $16,000, divided into 160 shares of $100 each, was in vio-
lation of the rights of the holders of full-paid stock who did
not consent thereto, was contrary to law, and ought to be de-
clared void and canceled of record; that judgment should be
rendered accordingly with costs in favor of plaintiffs; and
that the judgment sought in favor of the corporation against
the debtors on stock subscriptions should be denied without
prejudice of the right of the corporation to proceed independ-
ently for the collection of such indebtedness. Judgment was
rendered accordingly.

For the appellants there was a brief by *Timlin & Glicks-
man,* attorneys for *Durr, Halsted, Benzenberg, Spence,* and

*Joys,* and *W. L. Gold,* attorney for the *Milwaukee Patent Puncture Proof Tire Company,* and oral argument by *W. H. Timlin.*

*M. T. Halphide,* for the respondents.

MARSHALL, J.   According to the facts found as indicated, and they are not only well supported by the evidence but in the main are admitted by the answer, the dominating spirits among appellants conceived that by the preliminary contract mentioned in the statement they got the worst of the bargain in agreeing to contribute $20,000 in money against, as an equivalent, the patent right, to make up a capital of $40,000, in a corporation organized to acquire and use in all legitimate ways such patent right, and sought by means of the statutory authority to reduce capital stock in such an organization to even up with the respondents, to accomplish that under the guise of statutory authority, by arbitrarily extinguishing their liability for $12,000 upon their capital stock subscriptions, and canceling a corresponding amount of full-paid stock as if the same had no consideration to support it.   By that it was supposed the $20,000 agreed in the preliminary contract, and in effect in the corporate organization, to be contributed as an equivalent for the patent right, would be reduced to $8,000, regardless of the wishes of respondents.

While appellants' claim, as regards advantage having been taken of them in the preliminary contract and partial execution thereof, is referred to upon appeal as explaining, and perhaps palliating, the proceedings to enable them to obtain without the aid of any court, and without the consent of the other stockholders, a satisfactory measure of redress for their supposed misfortune, counsel do not venture to suggest that such claim, if it were in all respects well founded, warranted using, as they did, the statutory authority relating to the reduction of capital stock against the protest of respondents.

It must be conceded that liability to pay a subscription in-

debtedness for stock in a corporation can only be rightfully satisfied as to a stockholder not consenting, by payment according to the subscription contract. No reduction of authorized and subscribed for capital stock can be accomplished except by voluntary surrender by subscribers *pro rata,* or some method which will not prefer one stockholder over another. Corporate power in that regard does not authorize an arbitrary preferential cancellation of stock, or cancellation of a subscription liability for stock without in some proper manner treating all stockholders with like favor. The idea with which appellants started out, that they could effectively use their superior voting power to obtain an advantage over the holders of full-paid stock, has no support in reason or in law, and, as we understand it, no one connected with the case ventures to claim to the contrary. If the majority of stockholders of a corporation could so treat its assets and be immune from judicial interference in respect thereto, there would be no protection for the minority but the conscience of the majority, which would be a very uncertain reliance. The law in respect to the matter is well stated in Purdy's Beach, Priv. Corp. § 195*a,* thus:

"A statute which authorizes a corporation, at any meeting called for the purpose, to reduce its capital stock and the number of shares therein, does not empower it to effect a reduction by purchasing shares of a particular subscriber. Unless such course is adopted as will work exact and even justice to all owners of stock, the statute is inoperative. When the purpose is to reduce the capital stock by purchase of shares they may not be purchased from any particular stockholder alone without consent of all, but each stockholder is entitled to share *pro rata,* with all the others, in his surrender of shares for such purchase. No stockholder can be forced to sell his shares for reduction of the capital stock. Therefore when the transaction would operate for the relief and benefit of those from whom the stock is purchased and would increase the liability of the remaining stockholders, it is invalid."

It is argued on behalf of appellants that, conceding they could not rightfully force an adjustment of their differences with respondents in the manner attempted, the statute gave them the right to reduce the authorized capital stock, which was the only thing really accomplished by the proceedings annulled by the judgment; that the real wrong from respondents' standpoint was, or will be, effected, if at all, by executing the purpose of the resolution; that so far as appellants had a right to do what was done their motives in the matter cannot be judicially inquired into and their acts condemned upon the ground that such motives were bad. Counsel invoke the rule that the motives of members of a legislative body in doing what they may rightfully do are not a subject for judicial inquiry. That, at least, has its limitations as regards private corporations, if it has any application thereto at all. Dillon, Mun. Corp. (4th ed.) § 311.

We do not intend by the foregoing to suggest that a court of equity can supervise or revise corporate action within the scope of the corporate power where there is no bad faith in the matter; only error of judgment. In such matters the members of a corporation, as to authority lodged with them, and the board of directors in the field where that is the governing body, are supreme within the limits of honest administration and of the boundaries of discretion. But where the act of either such body, though lawful in itself, is designed to accomplish some illegitimate object,—the mainspring of the transaction is some ulterior motive,—and the result, if permitted to operate, will be injurious to the corporation or members not concerned in the transaction, such a member may successfully invoke equity jurisdiction for protection of the corporation where the proper officers will not do it. That cannot be too strongly impressed upon the minds of those in control of corporate affairs. *Wildes v. Rural H. Co.* 53 N. J. Eq. 425, 32 Atl. 676; *Berger v. U. S. Steel*

*Corp.* 63 N. J. Eq. 506, 53 Atl. 14; *Robotham v. Prudential Ins. Co.* 64 N. J. Eq. 673, 53 Atl. 842.

In the last case cited it was distinctly held that the purpose of the governing body of a corporation in determining upon a particular line of action may of itself render such action invalid and subject to annulment at the suit of stockholders. This language was used in the opinion:

"It is well settled that an act may be *intra vires* or *ultra vires,* according to the purpose which the directors have in view in doing it. The expenditure of money of a corporation by its directors is *per se,* often a neutral act; whether such expenditure is *intra vires* or *ultra vires* must, in large numbers of instances, depend upon the purpose—the actual honest purpose—which the directors have in view."

There was no need in this case to go very far to discover that the purpose of appellants in passing the resolution complained of was entirely illegitimate. Such purpose clearly appeared by the records of the corporation. They showed that, while the formal resolution voted on and certified to be filed as required by law did not disclose its real object, an amendment thereto covering the matter was in due form adopted and was in reality made a part thereof. The resolution so amended was acted upon the first time the matter was up for consideration and lost for want of the requisite two-thirds vote in favor thereof. The same resolution as amended was reconsidered and passed on the second occasion of the matter being taken up. If there was any question as to the scope of the amended resolution, it would be solved by the subsequent resolution instructing the board of directors how to carry out the reduction of stock.

So it comes down to this: The authority to reduce authorized capital stock was in form exercised for the wrongful purpose of creating a basis for favoring the majority of stockholders at the expense of the minority. In short, a statutory

authority given for one purpose was abused by being used for another and clearly illegitimate purpose. The doctrine advanced, that if stockholders by combining a ruling majority exercise a corporate power with bad motive to the pecuniary loss or prejudice of the corporation and outside stockholders, only the mere consequences in that regard, not the wrongful use of power, is open to judicial investigation and redress, has no foundation here. Abuse of power to the direct or indirect injury of stockholders in a corporation, as well as usurpation of power with like effect, as we have seen, is a subject that may be dealt with by courts and by the remedies which equity affords when there is no other remedy, or no other remedy which is reasonably effective. It would be difficult to conceive of a plainer, more wrongful, obviously fraudulent abuse of corporate power than the one under consideration. The authority to reduce capital stock is limited by its purposes. When it is exercised clearly for an illegitimate purpose, especially when such purpose is fraudulent, as in this case, the act is void. In *Niagara S. Co. v. Tobey,* 71 Ill. App. 250, it was held that a statute like ours contemplates a reduction of capital stock only on a basis which deals with all stockholders alike, and that any other attempted reduction is void as to a nonconsenting stockholder. *Currier v. Lebanon S. Co.* 56 N. H. 262, is to the same effect.

We view the resolution, in form reducing the capital stock as the statute authorizes, the same as if the amendment referred to, and the real purpose as plainly indicated by the corporate proceedings had both before and after such passage, were embodied therein by express words. It is quite clear that in the absence of such purpose such passage would not have occurred. The elements in the transaction are inseparable. Each was a part of a single scheme conceived by appellants to benefit themselves at the expense of the corporation and of the respondents. If they had any claim against

the first parties to the preliminary contract, the way attempted was not the proper one to enforce it. They directly and indirectly wronged respondents and wronged the corporation beyond the power of redress, efficiently, at the suit of respondents by any other remedy than that which a court of equity affords. Appellants, through a board of directors composed mostly of their own number, were in the control of the corporation. They insisted upon carrying out their scheme of so converting its assets to their own use as to put themselves on the ground floor, so to speak, as they viewed the matter, with holders of full-paid stock. Presumably, before this action was commenced they in form took to themselves the corporate assets represented by their subscription liabilities. The directors refused to recognize the holders of full-paid stock to any greater extent than forty per cent. of their holdings. They insisted that they were justified in so doing by the resolution reducing authorized capital stock. There was no reason whatever to expect that the wrongs committed would be remedied by those in control of the corporate affairs. All of respondents were united in interests and similarly affected. The situation was one which in its entire scope could only be dealt with in an equitable action. There may not be any precedent for just such an action as this, and none is necessary to sustain it. Since it is clearly within the principles of equity jurisprudence, that is sufficent.

As to the form of the relief, it may be that some other would have been more orderly, but, as at present advised, it would seem that—since the proceedings were mere steps in the execution of a wrongful purpose to change the relations of one class of stockholders of the corporation to their advantage, and those of another to their disadvantage, and so not to any extent within the statute relating to the reduction of authorized corporate stock—there could not be a more direct way to remedy the mischief than by judicially declaring the whole of such proceedings void and directing their can-

cellation of record.   In any event the remedy which the court awarded was efficient.   Appellants were not prejudiced by any mere matter of form.

*By the Court.*—The judgment is affirmed on both appeals.