BROWNE and others, Respondents, v. MILWAUKEE BOARD OF SCHOOL DIRECTORS, Defendant: AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, and others, Appellants.

*No. 421. Argued January 6, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 704.)

For the defendant-appellants there was a brief by *John S. Williamson, Jr.* and *Goldberg, Previant & Uelmen,* all of Milwaukee, and oral argument by *Mr. Williamson.*

For the defendant-respondent there was a brief by *James B. Brennan,* Milwaukee city attorney, and *Carl F. Kinnel,* assistant city attorney.

For the plaintiff-respondents there was a brief by *Willis B. Ferebee* of Milwaukee, attorney, and *Michael E. Merrill, Raymond J. LaJeunesse, Jr.,* and *John L. Kilcullen,* all of Washington, D. C., of counsel, and oral argument by *Mr. Merrill.*

HEFFERNAN, J. The appeal is by the defendants, the American Federation of State, County and Municipal Employees, AFL–CIO, from an order overruling the demurrer to the complaint. The action was brought by named secretarial, clerical, and technical employees of the Milwaukee Board of School Directors. The action was brought on behalf of themselves and on behalf of approximately 150 other employees who are similarly situated to test the constitutionality of that portion of the Municipal Employment Relations Act which provides that a union representing a majority of the employees in a bargaining unit may enter into a "fair-share agreement" which obligates all employees in the bargaining unit, even those who are not members of the union, to "pay their proportionate share of the cost of the collective bargaining process and contract administration measured

by the amount of dues uniformly required of all members." That agreement is authorized by secs. 111.70 (1) (h) and 111.70 (2), Stats.

The named plaintiffs are not members of the union, but under that "fair-share agreement," a sum is deducted from their wages in an amount equal to the dues that are required of union members. They seek to have that deduction from their wages declared unconstitutional, because a portion of it, they allege, is used for political purposes unrelated to collective bargaining and contract administration. They also seek the general declaration that statutes authorizing "fair-share agreements" are unconstitutional.

They have asked for an order determining that the action may be maintained as a class action and also for a temporary and permanent injunction restraining the defendants, the board of education and the union, from enforcing the "fair-share agreement" against the named plaintiffs and the 150 other members of the same class. In addition, they request judgment awarding them damages in the sum of money heretofore collected under the "fair-share agreement."

In response to the complaint, the school board answered, stating that it took no position on the merits of the controversy, and in effect it has agreed to abide without argument with whatever disposition is made of the case as the result of the controversy between the plaintiffs and the defendant union.

The union demurred to each of the four counts of the complaint. It demurred on the grounds that the complaint failed to state a cause of action, in that the plaintiffs had failed to allege an exhaustion of administrative remedies, they had failed to allege an exhaustion of contractual remedies, and they had failed to allege they had exhausted internal union remedies.

The union also contends that the plaintiffs did not allege facts sufficient to show that they represent a proper class and, therefore, that the case should not proceed as a class action. This latter argument was the basis for the demurrer on the ground of defect of parties.

The trial judge, on October 9, 1973, ordered the demurrer overruled on each ground. The union has appealed. We affirm.

Since this is an appeal from a demurrer, those facts properly pleaded are admitted. It is thus undisputed, in these proceedings only, that the union has used the money for purposes unrelated to collective bargaining. The plaintiffs allege that such purposes include (1) the financial support of political campaigns of candidates for public office; (2) the propagation of political and economic doctrines, concepts, ideologies, and legislative programs opposed by the plaintiffs and the class they represent; and (3) the payment of costs of publications, conventions, and strike benefits. The plaintiffs allege that these expenses are not embraced in the phrase, "cost of the collective bargaining process and contract administration." They allege that the use of the money for these purposes violates the rights guaranteed to the plaintiffs under the fourteenth amendment to the United States Constitution and various provisions of the Bill of Rights of the Wisconsin Constitution.

The allegation of the plaintiffs is that the statute itself is unconstitutional, in that it compels the payment of a "fair share" in the amount equal to member dues. There is no contention that the deduction is not in the sum mandated by the statutes.

They also allege that no public purpose is accomplished by a government-compelled exaction from their wages, for the money exacted goes to a private organization,

and in fact a portion of the money is used against the public purpose because it financially supports strikes by public employees in violation of state law.

They also allege that there is an unconstitutional delegation of legislative power, because the union, under the statutorily approved agreement, may determine the amount or tax to be deducted from the wages of public employees.

They also allege that the statutes are unconstitutional, because the procedures for testing a "fair-share agreement" by referendum are more onerous to nonunion municipal employees than the procedures approved by statute in respect to nonunion employees in private industry.

Since the question is before us on demurrer, the merits of these allegations are not under consideration by the court. The question is: Did the plaintiffs state a cause of action. We conclude that they did.

One of the grounds for demurrer is that the court lacks jurisdiction over the subject matter because the Wisconsin Employment Relations Commission has exclusive jurisdiction over the subject matter.

The union argues that the remedy before the Wisconsin Employment Relations Commission is exclusive, at least in the sense that that remedy must first be exhausted, because sec. 111.70 (2), Stats., provides:

"Such fair-share agreement shall be subject to the right of the municipal employer or a labor organization to petition the commission to conduct a referendum."

For the purposes of this appeal it is assumed, and the plaintiffs do not contest that assumption, that non-union members could petition for such referendum to be conducted by the WERC. The union, therefore, argues that, because the plaintiffs have not alleged that they have exhausted the remedy of referendum or that any

attempt to use that remedy would be futile, the jurisdiction of the WERC is exclusive. This argument fails, we conclude, because the plaintiffs are not attacking the underlying factual premise of a "fair-share agreement," *i.e.,* that it has the support of the majority of the employees. Their implicit assumption is that the statutes have been complied with but the statutes themselves are unconstitutional. This issue, which is at the heart of the plaintiffs' complaint, is irrelevant to the WERC's exclusive jurisdiction to order a referendum.

The issue in this case, the constitutionality of the statutes, is one in which both the courts and the WERC arguably have jurisdiction. Accordingly, the question is not that of exhaustion of remedies, which may grant exclusivity of jurisdiction to an administrative agency, but rather the priority with which jurisdiction should be exercised. The issue, therefore, is one of primary jurisdiction under which a trial court can, in its discretion, either hear a case or defer to the expertise of an administrative agency. The doctrine of primary jurisdiction was ably discussed in *Wisconsin Collectors Asso. v. Thorp Finance Corp.* (1966), 32 Wis. 2d 36, 44 ff., 145 N. W. 2d 33. That discussion emphasized that the question of primary jurisdiction arises only in cases where there is concurrent jurisdiction in the administrative agency and in the courts. Accordingly, the question is not one of subject matter jurisdiction, but which portion of the dispute-settling apparatus—the courts or the agencies—should, in the interests of judicial administration, first take the jurisdiction that both the agency and the court have. As we said in *Wisconsin Collectors Asso.:*

"Nonetheless, we believe it improper to couch such priority in terms of power or jurisdiction. The standard, in our opinion, should not be power but comity. The court must consider which course would best serve the

ends of justice. If the issue presented to the court involves exclusively factual issues within the peculiar expertise of the commission, the obviously better course would be to decline jurisdiction and to refer the matter to the agency. On the other hand, if statutory interpretation or issues of law are significant, the court may properly choose in its discretion to entertain the proceedings. The trial court should exercise its discretion with an understanding that the legislature has created the agency in order to afford a systematic method of fact-finding and policymaking and that the agency's jurisdiction should be given priority in the absence of a valid reason for judicial intervention." (Pp. 44, 45)

In the instant case, there is no substantial factual dispute. For demurrer purposes at least, it is agreed that money is deducted from the wages of the plaintiffs and some of that money is used for political purposes not related to the collective bargaining process. The issue posed by the case is the constitutionality of the statutes that authorize those deductions under a "fair-share agreement" that conformed to the statutory prescription.

Applying the rationale of *Wisconsin Collectors Asso.*, where there is no factual issue to be decided under the pleadings of the case and "issues of law are significant," the court may properly in its discretion entertain the proceedings.

As we view the issues in the instant case, justice can be expeditiously and substantially accomplished only by having the court system, which has plenary jurisdiction over constitutional questions, take the case *ab initio*.

In *Sawejka v. Morgan* (1972), 56 Wis. 2d 70, 201 N. W. 2d 528, upon which the union relies, this court affirmed the trial court's discretion in rejecting its concurrent jurisdiction in favor of the expertise of the tax appeals commission. In that case, however, we pointed out that there existed, "many factual issues as to the

application of sec. 77.52 (2) (a), Stats., to plaintiffs' business operations that fall within the expertise of the tax appeals commission. The legislature has created the tax appeals commission to afford a systematic method of fact-finding . . . ." (P. 80)

Although the issues in this case are within the concurrent jurisdiction of the WERC, we are mindful of its manifest reluctance to exercise its jurisdiction to issue declaratory judgments on constitutional issues and that it has stated, as a matter of policy, such issues should be brought to the courts. *See: In the Matter of the Joint Petition of the City of Cudahy and International Association of Fire Fighters, AFL–CIO, Local 1801,* WERC Dec. No. 9381, December 15, 1969.

The trial court properly held that the subject matter of this action was not exclusively in the WERC, that the administrative remedy of referendum was irrelevant to the issue raised here, and accordingly it properly exercised its function under the doctrine of primary jurisdiction when it concluded that the court had jurisdiction and that the ends of justice would best be served by proceeding with the action.

The union's demurrer was also predicated on the argument that the plaintiffs must allege facts showing the exhaustion of any contractual remedies or the futility of doing so. Basically, it argues that, before the plaintiffs can challenge the "fair-share agreement"—an action taken pursuant to the collective bargaining agreement—they must allege they have exhausted their contractual remedies. The trial court held that nonunion members were not obligated to exhaust contractual remedies.

The union argues that to establish a separate rule, requiring union members to exhaust the remedies afforded by a contract but giving nonunion employees the right to seek prior and alternative relief, "fractures" the collective bargaining process and undermines the integrity and exclusivity of contractual remedies.

While those cases relied upon by the union correctly state the law applicable to the circumstances under which they arose, each case relied upon involves factual circumstances in which the employee is seeking to enforce the terms of the collective bargaining agreement.

In the cases cited by the union, the employees brought their action in reliance on the collective bargaining agreement and not, as here, in complete derogation of it. For example, in *Widuk v. John Oster Mfg. Co.* (1962), 17 Wis. 2d 367, 374, 117 N. W. 2d 245, the court enforced the doctrine of exhaustion of contractual remedies, because the proceedings were "brought by the employee against his employer seeking reinstatement of employment or specific performance of a collective-bargaining agreement when the agreement provides a means of securing such relief." In such cases it is indeed appropriate to require employees to exhaust the remedies afforded by the contract upon which they base their claim for relief. When an employee is seeking to enforce the terms of a collective bargaining agreement, he is bound by the provisions therein, including the remedies that are provided for employees. However, that rationale does not apply in this case where the employees are seeking not to enforce the provisions of the contract, which are statutorily antiseptic, but to overturn the contract itself on the ground that the statutes upon which it is based are unconstitutional. There is no remedy under the contract in this case which could declare the underlying statute unconstitutional. As a matter of law, the pursuit of contractual remedies would be futile.

Moreover, the plaintiffs alleged the futility of reliance on union contractual remedies on the ground that, in *Judith D. Berns v. Milwaukee Board of School Directors,* WERC Dec. No. 11280–B, December 28, 1972, the WERC held that a nonunion employee taking a grievance to the employer without union representation does not have

access to contractual grievance procedure. We do not in this case decide the correctness of that ruling, but the use of that decision in the plaintiffs' argument demonstrates a reasonable basis upon which they could conclude, aside from the points herein discussed, that they as nonunion members would be afforded no remedy under contractual grievance procedure.

The plaintiffs also alleged that on at least two occasions they protested to both the board and to the union and objected to the deductions under the "fair-share agreement." The record, therefore, shows that the plaintiffs indeed made at least preliminary efforts to invoke contractual remedies, and under the situation here it would have been futile to pursue them further.

The trial court correctly overruled that portion of the demurrer which the union based on the plaintiffs' failure to exhaust contractual remedies.

The union also argues that the plaintiffs were required to exhaust any internal union remedies prior to bringing this action. As we pointed out in respect to the argument involving exhaustion of contractual remedies, each of the cases cited by the union appropriately states the law applicable to the factual context in which it arose. The union relies on the Wisconsin cases of *Kopke v. Ranney* (1962), 16 Wis. 2d 369, 114 N. W. 2d 485; *Cheese v. Afram Brothers Co.* (1966), 32 Wis. 2d 320, 145 N. W. 2d 716; and *UAW, Local 283 v. Scofield* (1971), 50 Wis. 2d 117, 183 N. W. 2d 103. Those cases are not controlling, not for the reason argued by the plaintiffs that they involved union members and therefore do not apply to nonunion employees, but rather those cases are inapplicable because the employees therein alleged specific violation of union rules or responsibilities. It was in accordance with sound public policy to require an employee to first give the union an opportunity to correct its errors, if indeed it erred in the application

of its own rules or defaulted in respect to its responsibility to employees, union or not.

In the instant case, however, the employees have no quarrel with what the union has done. They argue that the statutes under which it operated are unconstitutional. This is not an internal dispute. It was beyond the power of the union to correct, if correction were required, the allegedly unconstitutional legislation.

*Kopke, supra,* stated policy reasons why courts should refuse to intervene in internal union affairs until appeals within the union are exhausted. The three reasons stated were: To reduce the burden on the courts by letting the union take appropriate corrective action, to obtain the expert judgment of union tribunals to aid the court in any subsequent decision, and to preserve the autonomy of unions by policing their own rules and giving them an opportunity to correct any errors that might have been made.

In the instant case, the constitutionality of the statutes cannot be resolved by the union. The expertise of the union does not extend to deciding constitutional issues, and the union made no mistake. There is no allegation that either the union or the school board failed to act within the statutory guidelines.

The defendants also place heavy reliance upon two federal cases, *Reid v. International Union, United Automobile, Aerospace & Agricultural Implement Workers* (10th Cir. 1973), 479 Fed. 2d 517, and *Seay v. McDonnell Douglas Corp.* (D. C. Cal. 1973), 371 Fed. Supp. 754, for the proposition that nonunion employees must first exhaust internal remedies before bringing an action in court for the recovery of deductions that have been used for political purposes.

In each of those cases, the employees alleged that the union had breached its duty of "fair representation" when it used money for political purposes. In each of

those cases, the dismissal of the action was based upon the court's conclusion that the employees had not stated a cause of action for the breach of that duty, because the union had in fact satisfied its obligation of representation by establishing a procedure whereby an employee could make objection to the union and recover the portion of the deduction used for political purposes, and that the union would thereafter cease collecting such sums.

In *Reid,* page 520, the court expressly stated that it was not deciding whether exhaustion of internal union remedies was a prerequisite to court action; and, in *Seay,* the court did not discuss the question of exhaustion of internal union remedies. Those cases revolved about the question of a union's duty to fairly represent employees in a bargaining unit, a subject upon which the union and, arguably, the labor board would have substantial expertise. The basic question in the instant case, however, is not that of fair representation but constitutional questions not germane to the representation duties of a union and certainly not within its expertise.

We also agree that the trial judge properly overruled the demurrer on the ground of defect of parties. The union argues that the plaintiffs do not represent a proper class, since it cannot be assumed that no nonunion employees "wish the negotiation and administration of collective agreements that the 'Fair Share' Act makes possible."

It contends that, under *Pipkorn v. Brown Deer* (1960), 9 Wis. 2d 571, 101 N. W. 2d 623, the test of common interest to maintain a class action pursuant to sec. 260.12, Stats., is whether all the members of the purported class desire the same outcome of the suit that their alleged representatives desire. The union argues that, in this case, it is probable that some nonunion employees want the "fair share" terminated while others

want it continued. It therefore asserts that the plaintiffs do not represent a class composed of all of the nonunion employees but only represent themselves.

While the union correctly states the law, the question posed comes to us on demurrer; and, as we are required, in determining the sufficiency of a complaint in this procedural posture, we must give it a liberal interpretation sustaining the complaint if it is at all possible to do so. As so read, we conclude that the complaint alleges that all nonunion employees in the class object to the deduction of dues from their wages. There is no allegation that the plaintiffs represent all nonunion employees, but only those similarly situated, whose numbers are in excess of 150. We conclude that this complies with the class action statute, sec. 260.12, Stats., in that "the question is one of a common or general interest of many persons or when the parties are very numerous and it may be impracticable to bring them all before the court." *See: Schlosser v. Allis-Chalmers Corp.* (1974), 65 Wis. 2d 153, 222 N. W. 2d 156.

The union also argues that, under *Seay* and *Reid, supra,* the class action could not be maintained, because recovery was available only to those employees who had objected to the use of the funds deducted for political purposes.

In the first place, we point out that no statute of the federal government similar to Wisconsin's has been called to our attention which specifically authorizes "fair-share agreements" to be measured "by the amount of dues uniformly required of all members." Moreover, the complaint specifically alleges that the plaintiffs had objected to "the compulsory exaction of their money as dues to be paid to Local 1053, including the use of any portion of such exacted dues for purposes other than collective bargaining. . . ."

Thus, there is an allegation that a specific protest or objection had been made by the named plaintiffs, who allege that they represent the wishes of all employees in the class. In addition, as we have pointed out before, the objection made to the union is meaningless under the present facts, when the objection is to the constitutionality of the entire "fair-share" statutes, an objection which neither the union nor the employer could resolve on the constitutional basis sought here. It may well be that the allegation that these plaintiffs represent a substantial class, composed of numerous employees in addition to themselves, will be proved factually incorrect if tested in the trial court. That question is not, however, before us on demurrer. Until, in the trial of this case, it may be determined that the named plaintiffs are not representatives of the class, the class action should be permitted to proceed. It should also be pointed out that the interpretations of the federal statutes in respect to class actions are not necessarily controlling with respect to class actions brought under the state law.

The trial judge properly overruled the demurrer.

*By the Court.*—Order affirmed.