O'LEARY, and another, Plaintiffs-Appellants: TEICH-
MILLER, and others, Plaintiffs, v. BOARD OF DI-
RECTORS, HOWARD YOUNG MEDICAL CENTER, INC.,
and others, Defendants-Respondents.

Court of Appeals

*No. 78–048. Submitted on briefs December 13, 1978.—*
*Decided February 23, 1979.*
(Also reported in 278 N.W.2d 217.)

For the plaintiffs-appellants the cause was submitted on the brief of *John H. Ames* of *John H. Ames & Associates, Ltd.* of Minocqua.

For the defendants-respondents the cause was submitted on the brief of *Thomas N. Akey* and *Gerard W. Cook* of *Lund, Harrold & Akey, S.C.* of Minocqua.

Before Dean, P.J., Donlin, J., and Foley, J.

FOLEY, J.   The judgment dismissed plaintiffs' complaint seeking declaratory and injunctive relief against the defendant, Howard Young Medical Center, Inc., and its directors. The allegations of the complaint and the attached exhibits set forth the following facts.

Howard Young Medical Center, Inc., is a ch. 181, Stats. corporation. It was originally organized in 1948 as the Lakeland Hospital Association of Woodruff, Wisconsin and later known as Lakeland Memorial Hospital, Inc. In 1972 Howard Young died and by his will conditionally bequeathed a portion of his estate to a trust fund for the benefit of the corporation. To receive the bequest the corporation was required to change its name to the Howard Young Medical Center, Inc.; to reduce its number of directors to nine; and to elect as directors, for five-year terms, nine persons designated in the will.

The members of the corporation accepted the conditions of the will, amended the articles of incorporation accordingly, and elected the named directors to five-year terms. Shortly thereafter the new board of directors adopted the initial bylaws of the Howard Young Medical Center, Inc. In respects material to this case the new bylaws resembled those under which the corporation had previously conducted its affairs.

The bylaws provided for three classes of individual members depending upon the value of their contributions and one class for contributing organizations. Life members were those contributing $5,000 or more. Contributing members were those contributing more than $100 and less than $5,000 in any one year, with membership then lasting for ten years. Associate members were those contributing $5 to $100, with membership effective for one

year. Organization membership was based upon a donation of $300 or more, and was effective for ten years. The bylaws provided that every member, regardless of class, had equal membership rights including voting rights. Proxy voting was prohibited. The bylaws did not provide any procedures or requirements for nominating and choosing subsequent directors.

In 1975 the bylaws were amended by the board of directors, but the membership categories and rights described above were left unchanged. On July 26, 1977, three months before the expiration of the five-year terms of the directors elected under the dictates of the will, the bylaws were again amended by action of the board of directors. This time there were substantial changes affecting the members and their rights. The equality of membership rights between classes was abolished. Under the new bylaws, each member was given one vote for every $100 of contribution to a maximum of 5,000 votes. Associate members holding that status prior to the adoption of the bylaw amendments retained one vote. Those becoming associate members afterward would have no vote, as they would be contributing less than the minimum $100. In addition, the ban on proxy voting was abolished. The board also provided for waivers of "certain membership rights" as a condition of acceptance where "granting membership rights in the normal fashion would jeopardize . . . the best interests of the corporation."

Procedures were also provided, where none existed in the previous bylaws, for nominating directors. One of the requirements was for the nominating person, to the extent of his or her knowledge, to provide the chairperson of the board of directors with an estimate of the total number of votes to be cast for the nominee. Other changes included a reduction in term of membership from ten years to one year for contributing and organization

members, and a ban on secret ballots at membership meetings.

Three days prior to the July 26, 1977 board meeting, thirty-one members called for a special meeting of the members for July 31, 1977. The call was delivered to the secretary of the corporation, with a copy going to the executive director. The stated purpose of the meeting was the adoption by the membership of the 1975 bylaws. Adoption by the members would have then precluded amendment by the board of directors under sec. 181.13, Stats. [1]

On July 25, 1977 a proposed notice of the meeting was delivered to the secretary and executive director. The bylaws required the notice to be sent to the members at least five days prior to the meeting. However, the corporation failed to send any notice and did not tell the members requesting the meeting of the failure until it was too late for the members themselves to mail the notice. At some time between July 23 and July 26, an unnamed director refused to provide a membership list to one of the members.

The plaintiffs, purporting to represent a class of members, have brought this action seeking a declaratory judgment setting aside the directors' July 26, 1977 amendments to the bylaws.

As a first of two causes of action the plaintiffs alleged that sec. 181.13 precluded the directors from amending the bylaws as they did. While there was never a formal adoption of any set of bylaws by the members, the cause

---

[1] 181.13 *Bylaws.* The initial bylaws of a corporation shall be adopted by its board of directors. Thereafter bylaws may be adopted either by the members or the board of directors, but no bylaw adopted by the members shall be amended or repealed by the directors, unless the bylaws adopted by the members shall have conferred such authority upon the directors. Any bylaw adopted by the board of directors shall be subject to amendment or repeal by the members as well as by the directors.

of action is based upon the theory that the existing by-laws relating to members' rights had been adopted by "custom and acquiescence." Thus, sec. 181.13 would act to prevent any further amendment by the directors without membership approval.

The second cause of action alleges a conspiracy by all defendants except the corporation "to impair plaintiffs' valuable membership rights in an attempt to entrench themselves and successors of their choosing in power, thereby negating the voting power which the members had heretofore enjoyed." The acts alleged in furtherance of the conspiracy were the passage of the July 26, 1977 amendments to the bylaws and the suppression of a special meeting called for by the members to preserve the old bylaws.

The defendants responded to the complaint with a motion to dismiss. Among other grounds not relevant to this appeal, the defendants moved to dismiss because the named plaintiffs were not representative of the class they purported to represent, and because neither purported cause of action in the complaint stated a claim for which relief could be granted. In the alternative, a motion for a more definite statement of facts was made relating to the conspiracy charge.

The trial court granted the motion to dismiss. On the first cause of action the court ruled that there was no legal support for a claim that bylaws formally adopted by a board of directors may then be adopted by the membership by means of custom and acquiescence. The trial court found this doctrine applicable only where there has been a variation in practice from the bylaws over a period of time, or where there has been no bylaw governing the practice. Thus, this cause of action was dismissed without leave to replead.

On the conspiracy count the trial court found that the facts as alleged were insufficient to state a cause of ac-

tion. Therefore count two was also dismissed, but with leave to replead within twenty days, setting forth certain of the facts requested in the motion for a more definite statement. These facts included:

. . . .

(b) The acts of the defendants which were illegal or unlawful.
(c) What purpose of the defendants was illegal or unlawful.
(d) When the illegal or unlawful acts were performed.
(e) Facts with regard to the formation and operation of the alleged conspiracy.

The plaintiffs were also instructed to include in their amended complaint a more specific description of the represented class or classes, including their total number.

The plaintiffs elected not to amend their complaint, and judgment of dismissal with prejudice was entered. This appeal followed.

## ISSUES

1. Did the trial court err in dismissing the plaintiffs' first cause of action?
2. Did the trial court err in dismissing with leave to replead, the plaintiffs' second cause of action?
3. Did the trial court err in requiring the plaintiffs to amend their complaint to specifically describe the class they represented, including the number of members?

On the first cause of action the plaintiffs allege that the 1972 bylaws, as amended in 1975, were adopted by the membership by custom and acquiescence, and thus, under sec. 181.13, the board of directors lacked the power to amend them in 1977. We affirm the trial court's ruling that only by formal adoption procedures, taken at a meeting of the members, could the membership have prevented the directors from exercising their power to

amend. There was no formal adoption alleged and therefore no cause of action based upon a violation of the sec. 181.13 provision which prohibits directors from amending bylaws adopted by the membership.

Adoption by custom and acquiescence does find acceptance where there has been acquiescence for a number of years in a uniform custom or usage not in accord with the bylaws regularly adopted, or where no bylaw has existed to govern the customary practice. *In re Osteopathic Hospital Ass'n of Delaware,* 195 A.2d 759 (1963). In Wisconsin the court recognized adoption by custom and acquiescence where bylaws were tentatively approved by members and applied for a number of years, but never officially adopted. *Graebner v. Post,* 119 Wis 392, 96 N.W. 783 (1903). However, to extend the concept to informal adoption by custom and acquiescence of bylaws regularly promulgated and adhered to for some uncertain length of time would be contrary to good policy. Because informal adoption would occur in each case after some varying and indeterminate length of time, the practical effect would be to create uncertainty as to when boards of directors have the power to amend any particular bylaw.

Application of the informal adoption concept in this case would also directly conflict with the corporate intent expressed in the Medical Center's bylaws, each set of which contained formal procedures for membership adoption of bylaws enacted by the directors.

On the second cause of action the trial court found insufficient facts alleged to support a conspiracy cause of action. The trial court predicated its finding upon its ruling that the 1977 amendments of the new bylaws were lawful because they did not violate sec. 181.13 or the corporate bylaws and articles of incorporation. Therefore, none of the facts alleged concerning the July 26, 1977

meeting of the directors were considered by the trial court to be relevant to the conspiracy cause of action. The remaining allegations concerning suppression of the proposed special meeting were then held insufficient.[2]

We reverse based upon our conclusion that the allegations concerning the actions taken to amend the by-laws at the July 26 meeting should have been considered and are sufficient to state a cause of action. The fact that acts performed by a board of directors of a non-profit corporation are *intra vires* does not necessarily mean that they cannot be set aside by the court upon action of the membership. When bad faith motivates an act otherwise within the directors' authority, a cause of action based upon a breach of the directors' fiduciary duty results. In *Theis v. Durr,* 125 Wis. 651, 659, 104 N.W. 985 (1905), the court stated that:

[W]here the act of [the directors], though lawful in itself, is designed to accomplish some illegitimate object,—the mainspring of the transaction is some ulterior motive,—and the result, if permitted to operate, will be injurious to the corporation or members not concerned in the transaction, such a member may successfully invoke equity jurisdiction . . . . That cannot be too strongly im-

---

[2] The respondents argue that the trial court's ruling on the second cause of action was in response to the motion for a more definite statement. Therefore, our review should be limited to the question whether the trial court abused its discretion in dismissing the complaint upon failure to comply with the court's order to amend. However, we interpret the trial court's ruling to be, in fact, a response to the motion to dismiss, so that our review properly goes to the question whether the original complaint contained a valid cause of action. If the trial court had been granting the motion for a more definite statement, it had no reason to dismiss the complaint nor any need to find a failure to state a cause of action. The issue of what we are reviewing is of no great importance in any event because of our holding that the original complaint was sufficient.

pressed upon the minds of those in control of corporate affairs.

In *Theis* the court found that "a statutory authority given for one purpose was abused by being used for another and clearly illegitimate purpose." 125 Wis. at 660–61.[3]

In *Martin Orchard Co. v. Fruit Growers C. Co.*, 203 Wis. 97, 233 N.W. 603 (1930), the court noted:

> [T]he majority, even with respect to operations within the powers of the corporation, cannot fraudulently or dishonestly conspire to turn over to themselves corporate property or advantages to the detriment of the corporation itself or a minority of its stockholders.
>
> The directors likewise cannot fraudulently transfer advantage to themselves or a majority created by their fraudulent act.[4]

*Theis* and *Martin Orchard* involved stock corporations. However, in the area of directors' obligations to the corporation and its members or stockholders, the differences between stock and nonstock corporations have no bearing; the same relationship of trust and confidence exists. *In re Osteopathic Hospital Ass'n of Delaware, supra;* Pasley, *Non-Profit Corporations—Accountability*

---

[3] In *Johnson v. Bradley Knitting Co.*, 228 Wis. 566, 280 N.W. 688, 694 (1938), the court cited *Theis* in recognizing that "[i]t is elementary law that legal power cannot be used to effectuate a fraudulent purpose." *See also Steven v. Hale-Haas Corp.*, 249 Wis. 205, 249 N.W.2d 620 (1946); 13 Fletcher, *Cyclopedia Corporation* §5821 (rev. ed. 1970).

[4] In *Albert E. Touchet, Inc. v. Touchet*, 264 Mass. 499, 163 N.E. 184, 187 (1928), it is said that directors

[c]annot rightly manipulate the affairs of the corporation primarily with the design of securing the control of the corporation to one particular group of stockholders, or of excluding another group from the exercise of its corporate rights.

*See also Kahn v. Schiff*, 105 F. Supp. 973 (S. D. Ohio 1952).

*of Directors and Officers,* 21 THE BUSINESS LAWYER 621 (1966).

■

The allegations here clearly support a cause of action based upon an improper motive for amending the bylaws. The plaintiffs allege that the purpose of the amendments was to entrench the directors and their chosen successors in power by depriving members of their basic participating rights. The complaint makes clear that the amendment of the bylaws was the act performed in bad faith and it is clear who performed that act. Therefore a cause of action was sufficiently stated in the complaint for breach by the directors of their duty to act in accordance with the trust and confidence placed in them by the members and the complaint should not have been dismissed.[5]

■

We add that the plaintiffs may also have a cause of action based upon impairment of their contract rights, for the bylaws and articles of incorporation of a corporation form a binding contract between the members and the corporation. *Attoe v. Madison Prof. Policemen's Ass'n,* 79 Wis.2d 199, 255 N.W.2d 489 (1977). The law involving shareholder contract rights is explained in the following excerpt from a New Jersey case:

It is the law generally that a reserved right to amend the by-laws of an association, whether to be exercised by the majority or, in some cases, a larger proportion of stockholders, members or directors, is a limited rather than an absolute right, even though the reservation is

---

[5] We do not address the question whether an equitable conspiracy action is maintainable. It is said that a conspiracy action is one at law for the purpose of obtaining money damages for the wrongful act. 15A C.J.S. *Conspiracy* §21 (1967). A conspiracy action as such is unnecessary to enjoin unlawful acts by corporations or corporate directors when a stockholder or member has the right to bring the action.

expressed in broad and general terms. It is often said that such a right to amend may not be extended so as to impair or destroy a contract or vested right, that it does not authorize the adoption of an amendment which will have such an effect, and that in general the exercise of such a right should be confined to matters touching the administrative policies and affairs of the corporation, the relations of members and officers with the corporation and among themselves, and like matters of internal concern. *Lambert v. Fisherman's Dock Cooperative, Inc.*, 297 A.2d 566, 568–69 (N.J. 1972).

To prevail upon a contract rights theory, the plaintiffs would have to convince the trial court that the amendment of the Medical Center's bylaws involved impairment of contract rights rather than matters of internal concern. They would also have to show the inapplicability of the reasoning of *Johnson v. Bradley Knitting Co., supra,* note 3, where the court held that the statutory right of the majority of stockholders of a ch. 180, Stats., corporation to amend the articles of incorporation was incorporated into the stockholders' contract.[6]

In granting leave to replead the second cause of action the trial court also instructed the plaintiffs to amend their definition of the represented class to provide more specificity. The respondents contend that the trial court in part based its dismissal upon the insufficient allegations concerning the represented class, and that the trial court was therefore entitled to enter judgment of dismissal with prejudice when the plaintiffs failed to replead a proper class definition as directed.

We do not construe the trial court's order in this manner. We find the instruction to amend the class allega-

---

[6] While plaintiffs do not suggest the impairment of contract rights theory in their complaint, they are bound only by the facts alleged and not by their theory of law. *Attoe v. Madison Prof. Policemen's Ass'n, supra.*

tion to be a separate order from the dismissal of the second cause of action and not serving in itself as grounds for dismissal. Therefore, the plaintiffs are not prejudiced by their decision to appeal the dismissal of the complaint rather than repleading the second cause of action. Instead, we consider the instruction to provide a more specific class definition as being held in abeyance pending resolution of this appeal.

However, because the trial court's instruction is reimposed by our reinstatement of the complaint, we provide some comment on the sufficiency of the plaintiffs' definition of the represented class.

As the trial court noted, the plaintiffs are notably vague in their complaint in defining the class. They allege only that they are members and that they represent themselves and all others similarly situated. Taking these statements at face value, the logical conclusion is that the plaintiffs purport to represent all members. Yet the issue is raised whether individual plaintiffs can represent the category of organizational members. There may be problems in representing those members who seem to benefit from the amended bylaws through increased voting power. "[T]he test of common interest to maintain a class action . . . , is whether all the members of the purported class desire the same outcome of the suit that their alleged representatives desire." *Browne v. Milwaukee Bd. of Sch. Directors,* 69 Wis.2d 169, 230 N.W. 2d 704, 710 (1975).[7] The trial court concluded after oral argument on the motion to dismiss that the plaintiffs were attempting to represent only associate mem-

[7] *Browne* was decided under §260.12, Stats. (1973), which is essentially identical to §803.08, Stats., the present class action statute. *Schlosser v. Allis-Chalmers Corp.,* 86 Wis.2d 226, 271 N.W.2d 879 (1978). The test is therefore identical.

bers. In their brief to this court plaintiffs claim to represent 929 out of 1,025 members without specifying which categories of members they represent.

Thus, the plaintiffs' vague class definition, coupled with the fact of different categories of members and the differing effects of the amended bylaws on each, creates both confusion and the resultant need for clarification as to whom the plaintiffs purport to represent.

However, in *Hicks v. Milwaukee County,* 71 Wis.2d 401, 238 N.W.2d 509, 513 (1976), the court suggested that the complaint need only allege facts to show that an identifiable class exists for which the plaintiff may state a claim. Here, the plaintiffs have sufficiently alleged an identifiable class consisting of members of the corporation who have lost voting power or who have been otherwise damaged by the amended bylaws.[8]

Therefore the trial court, rather than requiring amendment, should have proceeded with its own determination of the proper class. As recently noted, "[t]he determination whether the action may proceed as a class suit is addressed to the trial court's discretion. It involves a weighing of the benefits to be gained from disposing of the entire controversy in one proceeding against the difficulties inherent in a single action." *Schlosser v. Allis-Chalmers Corp., supra,* note 7 at 883. Thus, it is the trial court's responsibility to decide if the plaintiffs have met three criteria: (1) That the named parties have a right or interest in common with the represented class, (2) that they are able to fairly represent the common class interest and, (3) that joinder of all members be impracticable. *Id.; Nolte v. Michels Pipeline Const., Inc.,*

---

[8] The court also noted in *Hicks, supra,* "that demurrer or its equivalent will seldom be an appropriate way to object to a class action."

83 Wis.2d 171, 265 N.W.2d 482 (1978). The duty to determine if these criteria are present is imposed to protect the rights of those represented but not before the court.

The allegations of the complaint alone cannot be determinative of the rights of the persons purportedly represented by the plaintiffs. In this case, because the trial court never made findings of fact as to the represented class of members, the dismissal of the complaint with prejudice only served to affect the rights of the named plaintiffs. In no way did it preclude an action by other members on the same claim. This result underscores the importance of the trial court establishing the proper class at an early stage, and always prior to deciding any substantive motions.

Additionally, we do not find that the defendants' rights were impaired by the failure to specify the class in the pleading. The original complaint adequately served notice to the corporation and directors of the claim, and of the fact that they were defendants in a class action brought by members of the corporation. The defendants are not prejudiced at the pleading stage by uncertainty as to exactly which members will be represented in the action and bound by the judgment. Under the Wisconsin Rules of Civil Procedure, the function of the pleadings is to give general notice of the claim. *See* Harvey, *Wisconsin Practice Rules of Civil Procedure* §§2023, 2024. The giving of general notice was satisfactorily accomplished by the complaint.

By our reversal in part it is unnecessary to decide the final issue of whether costs and disbursements were appropriately assessed against the plaintiffs.

*By the Court.*—Judgment affirmed in part, reversed in part and remanded.