SECURITY SAVINGS & TRUST COMPANY and another, Plaintiffs and Respondents, vs. COOS BAY LUMBER & COAL COMPANY, Defendant and Respondent: BOUTIN, Defendant and Appellant.

*October 8, 1935—January 7, 1936.*

For the appellant there was a brief by *Hughes & Anderson* and *Crawford & Crawford,* all of Superior, and oral argument by *R. E. Anderson.*

For the respondents there was a brief by *Powell & Sprowls*, attorneys, and *Hanitch, Johnson, Fritschler & Barstow* of counsel, all of Superior, and oral argument by *John S. Sprowls*.

The following opinion was filed November 5, 1935:

FRITZ, J.   The Coos Bay Lumber & Coal Company (hereinafter referred to as the corporation) was organized January 21, 1905, to acquire, hold, and sell as a holding corporation, certain Oregon timber land theretofore purchased by three of its proposed stockholders, Frank Boutin (a defendant herein), Louis Hanitch (a plaintiff herein), and ·W. E. McCord.   On December 27, 1904, they, together with R. D. Marshall, had agreed to organize that corporation, and that a by-law was to be adopted which should provide "that no salary or compensation for services of any nature shall be allowed to any officer, director, agent, or employee of said corporation, unless consent to such salary or compensation be first given by the owners of at least three fourths of the trust certificates to be issued as hereinafter provided," and "that no obligation or liability for or on behalf of said corporation shall be created or incurred by any officer, agent, or employee of said corporation, except for the payment of taxes on said property, unless the same be first authorized by written consent of the owners of at least three ·fourths of said trust certificates."   The corporation was organized accordingly, and those provisions were embodied in its by-laws. It issued three thousand shares of stock, as follows: Two thousand shares to Boutin, eight hundred and sixty shares to McCord, one hundred and twenty shares to Hanitch, and twenty shares to Marshall, who subsequently sold his holdings to Boutin.   At the outset, Boutin was elected a director and president, Hanitch a director and vice-president, ·and both continued ·as· such officers thereafter.·   McCord was likewise elected a director and secretary and treasurer, and

continued as such until he died January 28, 1918. On January 15, 1919, Boutin was elected treasurer also, and Lyman T. Powell, to whom Hanitch had transferred one share of his stock, was elected as a director and secretary, and they have continued to hold those offices. Upon the administration of McCord's estate, in probate, the plaintiff Security Savings & Trust Company became the holder, as trustee, of his eight hundred and sixty shares of stock. The corporation's sole business operations have been the holding and selling of its standing timber and collecting therefor, excepting that in 1906 and 1907 it also conducted logging operations under Boutin's supervision, for which he was paid a salary of $333 per month. In 1908, it began to realize in a substantial way on sales of its standing timber, which, prior to 1918, were negotiated largely by Boutin, who had complete charge of its business. In 1916, the directors and stockholders adopted resolutions, which provided for the liquidation of its assets, and directed its president and treasurer to distribute, as liquidating dividends, all sums received from those sales. Up to September, 1934, $2,947,590 were so distributed, and of this sum, $378,340 (or less than thirteen per cent) were distributed since June, 1924.

Prior to April 30, 1924, Boutin had been paying to himself out of corporate funds, a salary of $100 per month for his services as president and treasurer, and also a commission on his sales of timber. From April 30, 1924, to November, 1933, Boutin continued to recompense himself in that manner, except that after January 1, 1926, he drew his salary at the rate of $250 per month; and, during that period, he drew $25,900 as salary and $30,750 as commissions. He also paid his daughter, Meta Boutin, at rates varying from $10 per month in 1913 to $90 per month since 1925 for clerical services performed by her for the corporation; and in that manner he disbured $10,625 of the corporate funds since April 30, 1924. All of those payments

were made in disregard of the by-law which required the consent of the holders of at least three fourths of the stock to be obtained before making such payments. Likewise, no express contract for any such payments was ever made or authorized by any corporate act of the stockholders, directors, or officers. A resolution, unanimously adopted at a stockholders' meeting on February 18, 1911, provided that $200,000 could be paid to any person, including the officers and stockholders, as a commission for making a sale prior to September 1, 1911, of certain timber lands at a price of $2,000,000; but no sale appears to have been made under that resolution. However, at stockholders' meetings held on July 15, 1919, and June 27, 1924, resolutions were unanimously adopted which ratified, approved, and confirmed all disbursements made to corporate officers, directors, agents, and employees, up to January 1, 1919, and from January 1, 1919, to April 30, 1924, respectively. At the latter of those meetings, Boutin sought the amendment of the by-law prohibiting the payment of salary or compensation without consent thereto being first given by the owners of at least three fourths of the stock, so that it would not preclude any director from receiving compensation for services performed in any other office or from performing any special service for which compensation might be allowed. That amendment was not adopted because the Security Savings & Trust Company declined to authorize Powell, to whom it had given its proxy to vote its eight hundred and sixty shares on other matters, to vote for the adoption thereof.

Upon the trial, the court found and concluded, that between April 30, 1924, and December 31, 1933, the defendant, Boutin, had appropriated out of corporate funds, $25,900, as salary for himself, and $30,750, as commissions on his sales of timber, and had paid $10,625 to his daughter as salary; that those amounts were appropriated

by him without the consent of the owners of three fourths of the corporation's capital stock and in violation of its by-laws; and that Boutin was indebted to the corporation for $67,275, with interest thereon from the dates of those payments, making in all $90,733.26. Judgment was entered for the recovery of that amount by the corporation, and also for other relief, and Boutin appealed only from the provision which adjudged that he was to repay $90,733.26 to the corporation.

On this appeal, it is contended on behalf of Boutin: (1) That the by-law, which the court found had been violated by the payment of salary and compensation for services to Boutin and his daughter without first obtaining the consent of the holders of three fourths of the stock, is invalid because it is inconsistent with and repugnant to the provision in sec. 1776, Stats. 1898 (now sec. 180.13, Stats.), that "the stock, property, affairs and business of every such stock corporation shall be under the care of and be managed by a board of directors," and because it is unreasonable and arbitrary in that it would prevent the corporation from doing business in a reasonable and efficient manner; (2) that the plaintiffs expressly, or by operation of law, consented to and approved of the payments made to Boutin and his daughter; (3) and that the sums so paid were not more than reasonable and proper for the services performed.

The contention that the by-law is void because it is inconsistent with and repugnant to the above-quoted provision in sec. 1776, Stats. 1898, must be sustained. That by-law in purporting to prohibit the payment for services of any officer or employee, or the creation or incurrence of corporate liability, unless first consented to by the owners of three fourths of the corporate stock, is obviously in conflict with and in contravention of the provision in sec. 1776, Stats. 1898, which vests the care and management of the corporate property, affairs, and business in the board of directors. As is

stated in 14 C. J. p. 362, § 460: "By-laws of a corporation which are contrary to or inconsistent with its charter, articles of association or incorporation, or governing statute, are *ultra vires* and void, even though they may have been unanimously assented to by the stockholders or members. They must be consistent both with the terms and with the spirit and intent of the charter or governing statute." See also 14 C. J. pp. 362–364, § 461; 8 Fletcher, Cyc. Corp. § 4185. That rule was applied by this court in holding, in *State ex rel. Badger Tel. Co. v. Rosenow,* 174 Wis. 9, 182 N. W. 324, that, under the provision in sec. 1776, Stats. 1898, that the directors of stock corporations "shall choose one of their number president and such other officers as the corporate articles and the by-laws require," all corporate officers are to be elected by the directors, and that therefore a provision in the charter of the corporation that the officers shall be elected by a majority vote of the stockholders is void because it is in conflict with the statute which governs such election. The court then said: "The provision of the charter or articles of incorporation being in conflict with the statute, the statute governs, and the stockholders were without power to elect the officers." Similarly conflicting by-laws were likewise held void in *Brewster v. Hartley,* 37 Cal. 15, 99 Am. Dec. 237; *Tempel v. Dodge,* 89 Tex. 69, 32 S. W. 514, 33 S. W. 222; *Campbell v. Merchants' & Farmers' Mutual Co.* 37 N. H. 35, 72 Am. Dec. 324, 325; and *Union Mut. Fire Ins. Co. v. Keyser,* 32 N. H. 313, 64 Am. Dec. 375, 376. In the case last cited the court said: "Where the act of incorporation provides that any power granted to the corporation shall be exercised by any set of officers, or any particular agents, the power can be exercised only by such officers or agents, . . . and if the whole corporation attempt to exercise a power which, by the charter, is lodged elsewhere, their action upon that subject is void. . . . The by-law cannot be regarded as a limitation and restriction of

a power which is lodged by the charter in the directors." That decision was followed in *McCoy v. Northwestern Mutual Relief Asso.* 92 Wis. 577, 583, 66 N. W. 697, and in *Ledebuhr v. Wisconsin Trust Co.* 112 Wis. 657, 88 N. W. 607, in which this court also held that by-laws limiting the scope of provisions in policies issued by mutual insurance companies were void if they were in conflict with either a statute or a charter which authorized such provisions.

It follows that, as the by-law under consideration herein is void, the mere fact that consent by the owners of three fourths of the capital stock was not "first given" to the payments of the salary or compensation in question does not necessitate the conclusion reached by the learned circuit judge, that because of that omission, those payments were misappropriations of corporate funds which Boutin was obliged to repay to the corporation.

There remains, however, the question whether, even with that void by-law out of the case, Boutin, in the absence of an express contract, was legally entitled to take and retain corporate funds as salary for his services in the performance of his official duties as a director, president, or treasurer of the corporation. As is stated in 14a C. J. p. 136, § 1906: "A director or other fiduciary officer of a corporation presumptively serves without compensation. He is entitled to compensation for performing the usual and ordinary duties of his office when and only when there is a valid express agreement therefor; he cannot recover on an implied contract." Excepting that "in some jurisdictions, he may be entitled to compensation under an implied contract, where services clearly outside his ordinary duties as director or officer are performed under circumstances showing that it was well understood by the proper corporate officers as well as himself that the services were to be paid for."

Those rules were applied in *Lowe v. Ring,* 123 Wis. 370, 374, 101 N. W. 698, and that decision was followed in

*Hinkley v. Sagemiller,* 191 Wis. 512, 517, 210 N. W. 839. In the *Lowe Case* the court said:

"This state of the evidence leaves the case without proof of any express contract that defendant should receive a salary for his services as president.

"The question in the special verdict upon this issue was to the effect that, if there was an implied contract between the bank and defendant to pay for these services, the bank became liable therefor. The submission of this question was error. A president of a corporation cannot sue upon an implied contract to enforce a claim for services as an officer, when he is a stockholder or director. The adjudications are to the effect that such officer must show an express contract for compensation as a basis for such a claim."

In that connection, the court, in condemning an instruction given to the jury in respect to conversations and other conduct of corporate officers because of which the claimant contended that there existed an implied contract to compensate him, said:

"In connection with question No. 19 of the special verdict, the court in effect instructed the jury that the conduct of the officers and agents of a corporation in respect to the payment of a salary to the president for his official services would bind it under the same circumstances as an individual. As we have shown above, this is not the rule between a corporation and its stockholders and directors, when they act as its officers."

,On the other hand, in that case, exceptions to that rule, in so far as extraofficial services are concerned, were recognized by the court in saying:

"The cases in seeming conflict with this ruling generally present the distinguishing features that the services rendered for which recovery was claimed were either for extraordinary services rendered outside the usual official duties, or cases where a person other than a director or stockholder accepted an election to such a position under some person or body authorized to elect and employ some one not considered with the corporation."

Under the rules .stated above, because of the absence of any express contract therefor, Boutin was not entitled to any payment as salary or compensation for services performed by him as a director, or as the president and treasurer of the corporation. No contract by mere implication will suffice in that respect. Implications arising from the conduct of the officers and agents of the corporation, in respect to payments of salary to the officer for his official services, do not bind it under the same circumstances as an individual. *Lowe v. Ring, supra.* Consequently, as Boutin was not entitled to the $25,900 which he appropriated from April 30, 1924, to November, 1933, as salary for his services in his official capacities, the judgment, in so far as it covered the recovery of that amount by the corporation, was warranted.

However, under the rules stated above, that conclusion is not applicable to compensation taken for extraordinary services performed by Boutin otherwise than as an officer, if an implied contract to pay therefor is established by circumstances showing that it was well understood by those authorized to act on behalf of the corporation, that he was to be compensated for such services. Findings and conclusions to that effect were warranted by such facts as that the corporation by a resolution adopted at the stockholders' meeting held in 1911 had authorized the payment of $200,000 to any officer who made a sale of its land, and that it had, by resolutions similarly adopted in 1919 and 1924, approved and ratified payments made to Boutin as commissions on his sales of timber, and that entries in its books of account and financial statements of such payments in the years subsequent to April 30, 1924, were known to, and acquiesced in without any objection, by its officers and stockholders. But, since the court made no decision as to those matters or the question as to whether a contract by implication resulted by reason thereof, the cause must be remanded for a new trial

in that respect. In that connection, if the court determines that Boutin is entitled to recover compensation under any implied contract for any extraordinary services, it will also be necessary to determine the issue arising under the allegations in the complaint, as to the reasonable value of such services.

As it also follows that the void by-law does not defeat the right of Boutin's daughter to compensation out of corporate funds for clerical services performed by her for the corporation, there is applicable to those payments the rule that ". . . in the absence of an express agreement for remuneration, a subordinate agent or servant who renders services for the corporation at the request or with the knowledge and consent of the directors and under circumstances indicating an expectation of payment is entitled to recover the reasonable value thereof. . . ." 14a C. J. pp. 137, 138, § 1906. Consequently, if she performed her services under such circumstances, and the amounts paid did not exceed the reasonable value thereof, those payments were not a misappropriation of corporate funds. As those issues were not determined by the trial court, there must also be a retrial in that respect, including the question as to whether the amounts paid were reasonable.

*By the Court.*—That part of the judgment from which the defendant Boutin appealed, is reversed, and the cause is remanded with directions for further proceedings in accordance with this opinion.

A motion for a rehearing was denied, without costs, on January 7, 1936.