COURT OF APPEALS
DECISION
DATED AND FILED

October 31, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1590**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV6236

IN COURT OF APPEALS
DISTRICT I

DONALD SIMS,

   PLAINTIFF-APPELLANT,

 V.

JERUSALEM MISSIONARY BAPTIST CHURCH, INC., ANTOINETTE REDD
AND VIRGIL STEPHENS,

   DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Milwaukee County: CARL ASHLEY, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Donald Sims appeals from an order granting Jerusalem Missionary Baptist Church, Inc., (the Church), Antoinette Redd, and Virgil Stephens'[1] motion to dismiss Sims' amended complaint in which he sought to invalidate the 2019 version of the Church's bylaws. On appeal, Sims initially argued that: (1) the circuit court failed to construe inferences from the amended complaint in favor of Sims; (2) the amendments to the 1967 bylaws of the Church are void because the original bylaws only permitted amendment by a two-thirds majority vote of the members of the Church and members did not vote to amend the bylaws in 2016; (3) if the phrase, "by a [two-thirds] majority vote" in Article X of the 1967 bylaws was ambiguous, the text of Article X must be construed against the Church; (4) the Wisconsin Statutes do not permit the board of directors of a corporation like the Church to delegate the authority to amend corporate bylaws to an individual; and (5) WIS. STAT. §§ 181.0206 and 181.1022 (2019-20),[2] were violated when the Church's bylaws were amended in 2016 and 2019, because the amendments were neither adopted by, nor voted on by members of the Church.

¶2 After briefing was completed in this case, this court issued an order directing the parties to file a supplemental brief addressing whether WIS. STAT. § 181.13 (1967-68), which was the applicable statute when the initial bylaws for the Church were filed with the Wisconsin Secretary of State in 1967, applies or

---

[1] Because Antoinette Redd and Virgil Stephens are presenting the same arguments on appeal, we will include them in the reference to the Church throughout for ease of reading.

[2] We note that the language in WIS. STAT. §§ 181.0206 and 181.1022 is the same in the 2015-16 version of the Wisconsin Statutes and the 2019-20 version. Accordingly, all references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

whether some version of WIS. STAT. § 186.0206, governs how the Church's initial bylaws could be adopted.[3]

¶3      In his supplemental brief, Sims states that WIS. STAT. § 181.13 (1967-68), applies to the facts in this case, and therefore, for the 1967 Bylaws to be valid, the Church's board of directors had to adopt the bylaws. He then asserts that the board did not adopt those bylaws, and therefore, they are not valid and could not govern any future amendment of the 1967 Bylaws. He further argues that "[a]s the 1967 Bylaws were not valid, members of the Church had to approve the 1967 Bylaws by custom and acquiescence in order for the Church to function under the direction of Reverend Donnie Sims." Sims then argues that "[w]hether invalid or adopted by custom and acquiescence, the 1967 Bylaws could not be amended by the board to create new bylaws on January 1, 2016."

¶4      For the reasons stated below, we conclude that: (1) the allegations in the amended complaint and the documents attached thereto, demonstrate that the 1967 Bylaws were properly adopted by the Church's board of directors; (2) the 1967 Bylaws provide that the bylaws may be amended by a two-thirds majority vote of the Church's board of directors; (3) the Church's board of directors properly amended the Church's bylaws in 2016; (4) Rev. Donnie Sims properly adopted the 2019 Bylaws; and (5) if the 1967 Bylaws were invalid, then the 2016 Bylaws would have been the Church's initial bylaws and were properly adopted by the Church's board of directors. Thus, we conclude that the 2019 Bylaws

---

[3] Neither party mentioned WIS. STAT. § 181.13 (1967-68), in their initial briefs. That statute provides, in part, that "[t]he initial bylaws of a corporation shall be adopted by its board of directors. Thereafter, bylaws may be adopted either by the members or the board of directors, but no bylaw adopted by the members shall be amended or repealed by the directors, unless the bylaws adopted by the members shall have conferred such authority upon the directors."

3

currently are the bylaws that govern the Church, and therefore, Sims did not have the power to dismiss Redd and Stephens from the Church's board of directors. Thus, we affirm the circuit court's order granting the Church's motion to dismiss Sims' amended complaint.

## BACKGROUND

¶5      The Church was founded in 1967 by Reverend Donnie Sims,[4] Sims' father.  On June 28, 1967, Rev. Donnie Sims registered the Church with the Wisconsin Secretary of State and filed the Church's Articles of Incorporation and initial "Constitution—Bylaws" (1967 Bylaws).  The Articles of Incorporation named the five initial directors, which included Rev. Donnie Sims.  The 1967 Bylaws contain ten bylaws, numbered Article I through Article X.  Relevant to this appeal, Article X provides that "[t]he [Bylaws] under this constitution of the [C]hurch may be amended or rescinded by a 2/3 majority vote, but they may never be suspended."

¶6      Rev. Donnie Sims was the pastor of the Church and one of its directors.  He remained in those positions for fifty-five years, until his death on August 5, 2020.  Sims was installed as pastor of the Church on November 15, 2020.  Upon his installation as pastor, Sims dismissed Redd and Stephens from the Church's board of directors.

---

[4] Because both Donnie Sims and Donald Sims have the same last name, we refer to them as Rev. Donnie Sims and Sims.

*The 2016 Bylaws*

¶7      On January 16, 2016, the Church's board of directors adopted new bylaws for the Church.[5]  The 2016 Bylaws contain two bylaws relevant to this appeal.  Article V A. provides in part the following:

> [T]he Pastor, by virtue of office, shall be the President of the Board of Directors.  The Pastor shall be the [sic] responsible for the spiritual and doctrinal guidance of the church.  The Pastor is the chief executive officer of the Church and shall have the general oversight and supervision of the business and spiritual affairs of the Church and its ministries.  The Pastor shall be an ex-officio member of all committees of the Church and shall have general supervision of all Church officers.  The Pastor shall have the right to appoint or remove directors, officers and/or deacons of the Church ….

The second bylaw, Article XIV, titled Amendments, provides as follows:

> With the exception of Article V and Article XIV, these Bylaws may be amended or replaced with new Bylaws if approved or adopted by 2/3 majority of the Board of Directors at any regular or special meeting, except as otherwise indicated herein.  Article V and Article XIV of these Bylaws may not be amended except by the Pastor as led by the Word and the Spirit of God, or (i) as authorized by unanimous vote of the Board of Directors and (ii) subsequently confirmed by a vote of at least two-thirds (2/3) of the voting membership who are in attendance at a special meeting of the Church.

The 2016 Bylaws were "duly adopted at a meeting of [the] board [of] the directors of the corporation held on 01/16/16."

---

[5] We note that Sims asserted in his original complaint and in his amended complaint that the 2016 Bylaws were valid and governed the Church.

*The 2019 Bylaws*

¶8      In his amended complaint, Sims alleges that in 2019, Rev. Donnie Sims decided that Article V of the 2016 Bylaws should be amended to provide that the successor pastor of the Church should have the general oversight and supervision of the spiritual affairs of the Church, and that the Church's board of directors should have the general oversight and supervision of the business affairs of the Church.  It specifically alleges that Rev. Donnie Sims "retained an attorney and requested amendments to the [2016 Bylaws]" so that the bylaws for the Church would provide for the division of responsibilities between the pastor and the board of directors described above.  It further alleges that "[t]he attorney retained by Reverend Donnie Sims amended the [2016 Bylaws] and drafted the [2019 Bylaws] in accordance with the specific requests of Reverend Donnie Sims."  "The 2016 Bylaws of [the Church] were amended at the request of Reverend Donnie Sims, without consideration or adoption by the members of or the board for the Church."[6]

¶9      Article V of the 2019 Bylaws, titled "Founding Pastor; Successor Pastor," provides in part as follows:

> Duties and Powers of the Founding Pastor.…  Rev. Donni[e] is the Founding Pastor and the Lord's under-Shepard for this Church.…  [T]he Founding Pastor, by virtue of office, shall be the President of the Board of Directors.  The Founding Pastor shall be the responsible for the spiritual and doctrinal guidance of the [C]hurch.  The Founding Pastor is the chief executive officer of the Church and shall have the general oversight and supervision of the business and spiritual affairs of the Church and its

---

[6] We note that the language quoted here is repeated several times in the amended complaint.

6

ministries.… The Founding Pastor shall have the right to appoint or remove directors, officers and/or deacons of the Church[.]

A. Duties and Powers of Succession Pastor(s). For the purpose of these Bylaws, the individual who succeeds the Founding Pastor in office … shall be referred to herein as the Successor Pastor. Upon the appointment of the Successor Pastor by the Founding Pastor and/or Board of Directors, the Successor Pastor shall have the general oversight and supervision of the spiritual affairs of the Church and its ministries, and the Board of Directors shall assume and have the general oversight and supervision of the business affairs of the [C]hurch and its ministries.

The 2019 Bylaws reflect that they were "duly adopted at a meeting of [the] board [of] the directors of the corporation held on 6/25/19."[7]

***Proceedings in the Circuit Court***

¶10     Sims filed his complaint in the circuit court on October 8, 2021. In the complaint, he alleged that the 2019 Bylaws are not valid because "the amendment was neither considered nor adopted by the members or the board" and "the [2016 Bylaws] govern [the Church], and control the actions of the members and board of directors of [the Church], as the [2019 Bylaws] are not valid or legally binding." The complaint sought a declaratory judgment that "the [2019 Bylaws] of [the Church] are not valid or legally binding" and "[a]s the 2019 Bylaws of [the Church] are not valid or legally binding, the 2016 Bylaws of [the

---

[7] We note that the Church asserts that pursuant to Article XIV of the 2016 Bylaws, Rev. Donnie Sims did not need to submit the 2019 Bylaws to the board of directors to have the board adopt and approve them. As noted above, Article XIV of the 2016 Bylaws states in part that Article V—which gave the Pastor "the general oversight and supervision of the business and spiritual affairs of the Church"—may be amended "by the Pastor as led by the Word and the Spirit of God" or alternatively "by a unanimous vote of the board of directors" with that vote being "subsequently confirmed by a vote of at least two-thirds (2/3) of the voting membership who are in attendance at a special meeting of the Church."

Church] govern [the Church], and control the actions of the members and board of directors of the Church."

¶11    The Church filed its motion to dismiss the complaint on January 12, 2022, and the parties filed their briefs.  Sims then filed an amended complaint on March 14, 2022.  In his amended complaint, Sims made a different argument—he alleged that the 2016 Bylaws were invalid because the amendment "was not considered or adopted by the members or the board" of the Church and that the 2019 Bylaws were not valid because they were adopted based upon the terms of the 2016 Bylaws that were not validly adopted.  Thus, he alleged that both the 2016 Bylaws and the 2019 Bylaws were invalid and that the 1967 Bylaws govern the Church.

¶12    In his brief in opposition to the Church's motion to dismiss, Sims acknowledged that the Church's board of directors adopted both the 2016 Bylaws and the 2019 Bylaws.  However, he argued that the 1967 Bylaws could only be amended by a two-thirds majority vote of the members, and therefore, both the 2016 Bylaws and the 2019 Bylaws were invalid because they were not amended by a vote of the members.  He then argued that the 1967 Bylaws governed the Church.

***Circuit Court Decision***

¶13    The circuit court held a hearing on the Church's motion to dismiss on July 22, 2022, and rendered an oral decision.  The court stated that Article X of the 1967 Bylaws of the Church was ambiguous because, although it stated that "[t]he Bylaws under this constitution of the church may be amended or rescinded by a 2/3 majority vote," it did not state whether that vote was of the members of the Church or the board of directors of the Church.  It then stated that when there

is some ambiguity, subsequent conduct of the parties is highly probative of the intended meaning of the ambiguous terms and "the [c]ourt will normally adopt that interpretation of the contract, which the parties themselves have adopted."

¶14     The circuit court then considered how the 1967 Bylaws were amended in 2016.  It noted that the amendment in 2016 was done by the board of directors of the Church.  The court then held that that action by the board of directors of the Church in 2016 clarified what the intent of the parties was as to how the 1967 Bylaws could be amended.  The court then concluded that the amendment of the 2016 Bylaws in 2019 was also valid.  It stated that it was granting the motion to dismiss.

¶15     The circuit court then issued a written order dated August 30, 2022, which stated in part:

> IT IS HEREBY ORDERED as follows:
>
> 1.  [The Church's] Motion to Dismiss is granted in its entirety.
>
> 2.  [The Church] bylaws dated June 25, 2019 are the governing bylaws of [the Church].
>
> 3.  All conduct engaged in by Donald Sims relating to the general oversight and supervision of the business affairs of [the Church] since November 15, 2020, when he was named the Successor Pastor of the Church, is null and void and of no legal effect.
>
> 4.  The Board of Directors of [the Church] consists of Donald Sims, Antoinette Redd, Virgil Stephens, and Della Clipps, who were the directors of the Church just prior to November 15, 2020.
>
> 5.  The Amended Complaint … filed by [Sims], as well as this entire case, is hereby dismissed with prejudice and without costs to any of the parties.

¶16     This appeal followed.

## DISCUSSION

### I. Standard of Review

¶17 Whether a complaint states a claim upon which relief can be granted is a question of law that this court reviews *de novo*. *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693. When reviewing a motion to dismiss, "we construe the pleadings liberally and accept as true both the facts contained in the complaint and any reasonable inferences arising from those facts." *Doe 56 v. Mayo Clinic Health Sys.-Eau Claire Clinic, Inc.*, 2016 WI 48, ¶14, 369 Wis. 2d 351, 880 N.W.2d 681. We cannot "add facts in the process of construing a complaint," and we need not accept as true any legal conclusions stated in the complaint. *Data Key Partners*, 356 Wis. 2d 665, ¶19. "[T]he sufficiency of a complaint depends on substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled." *Id.*, ¶31.

### II. The 1967 Bylaws of the Church were Properly Adopted

¶18 The starting point in this court's analysis is whether the 1967 Bylaws were properly adopted pursuant to WIS. STAT. § 181.13 (1967-68). In their supplemental briefs in response to this court's order directing the parties to file supplemental briefs addressing whether § 181.13, which was the applicable statute when the initial bylaws for the Church were filed with the Wisconsin Secretary of State in 1967 and governs how the Church's initial bylaws could be adopted, both parties stated that § 181.13 applies to the facts in this case. That statute provides, in part, that "[t]he initial bylaws of a corporation shall be adopted by its board of directors." *Id.*

10

¶19    We note that both before the circuit court and initially on appeal Sims asserted that the 1967 Bylaws were valid and governed the operation of the Church. He argued that the 1967 Bylaws "were adopted by members of the Church." At times he argued that the 2016 and 2019 Bylaws were not valid because they were not adopted by the members of the Church as required by Article X of the 1967 Bylaws, which provides "[t]he By-Laws under this constitution of the church may be amended or rescinded by a 2/3 majority vote[.]" In his supplemental brief, Sims now argues that the 1967 Bylaws were not adopted by the board of directors of the Church and, are therefore, not valid and could not govern any future amendment of the 1967 Bylaws. However, he argues that "the bylaws used to amend the 1967 Bylaws were approved by the members of the Church by custom and acquiescence."[8]

¶20    Based on the following facts, we conclude that the Church's board of directors adopted the 1967 Bylaws. Most significant is the fact that WIS. STAT. § 181.13 (1967-68), specifically requires that "[t]he initial bylaws of a corporation shall be adopted by its board of directors." Thus, although the statutes governing adoption of the initial bylaws of a corporation were amended in the future to

---

[8] We also note that the Church has been inconsistent in its arguments regarding who adopted the 1967 Bylaws. At times it asserts that Rev. Donnie Sims adopted the bylaws as the incorporator of the Church and at times asserts that the board of directors adopted the bylaws. In its supplemental brief, the Church argues that whether the 1967 Bylaws were adopted by the Church's board of directors, the Church's members, or the Church's incorporator, it does not make a difference to the result of this appeal. It argues that if the 1967 Bylaws were adopted by the board of directors then pursuant to WIS. STAT. § 181.13 (1967-68), those bylaws are valid and new bylaws could be adopted by either the board of directors or Church members, which occurred in 2016 and 2019. Conversely, if the Church's members or its incorporator adopted the 1967 bylaws, those bylaws would be invalid and the Church's initial bylaws were those adopted by the Church's board of directors in 2016 under WIS. STAT. § 181.0206 (2015-16), and were properly amended in 2019 by the Church's board of directors under WIS. STAT. § 181.0206 (2019-20). We address the Church's argument in more detail below.

provide that "[t]he incorporators, members or board of a corporation shall adopt the initial bylaws for the corporation," *see* WIS. STAT. § 181.0206, the only way in 1967 that a corporation's bylaws could be adopted was by the board of directors of the corporation adopting those bylaws.  Here, Rev. Donnie Sims was the founder of the Church and was one of the original five directors of the board.  It is undisputed that the Church's Articles of Incorporation and 1967 Bylaws were filed with the Secretary of State for the State of Wisconsin on June 7, 1967.  The Secretary "certified that Articles of Incorporation of [the Church] … was in the date hereof, accepted and filed in my office."  On June 7, 1967, the Articles of Incorporation lists Rev. Donnie Sims as an initial director and he signed the articles on that date.[9]

¶21    Thus, based on the facts that WIS. STAT. § 181.13 (1967-68), provided that the only way the Bylaws for the Church could have been adopted in 1967 was for the Church's board of directors to adopt them, that the Articles of Incorporation list the Church's five original directors, that Rev. Donnie Sims was an initial director of the Church, that Rev. Donnie Sims signed the Articles of Incorporation and filed both the articles and the 1967 Bylaws with the Secretary of State who accepted them, we conclude that the record reflects that the Church's board of directors adopted the 1967 Bylaws.

---

[9] Sims argues that the fact that Rev. Donnie Sims was a director and signed the Articles of Incorporation does not show that the board of directors adopted the bylaws.  He asserts that Rev. Donnie Sims' signature does not show that he was signing as a director and thus he is merely signing as a member.  He also argues that there is another signature on the Articles of Incorporation and that person is not listed as a director and thus she must be signing as a member.  However, Sims does not provide any facts regarding whether that person is a member of the Church or why her signature is on the document.

## II. The 1967 Bylaws provide that the Bylaws may be amended by a 2/3 majority vote of the Church's Board of Directors

¶22   We next address whether the Church's board of directors had authority to amend the 1967 Bylaws or whether only members of the Church had authority to amend the bylaws.  The starting point of this court's analysis is the language contained in Article X of the Church's 1967 Bylaws which states that "[t]he Bylaws under this constitution of the church may be amended or rescinded by a 2/3 majority vote, but they may never be suspended."  We agree with the circuit court that the language in Article X of the bylaws is ambiguous because while it states that the bylaws may be amended or rescinded by a two-thirds majority vote, it does not state whether that vote would be of the members of the Church, the board of directors of the Church, or either the members or the board.[10]

¶23   "Thus, we first look to the contract language to ascertain the parties' intent, as our goal in scrutinizing a contract is to determine and give effect to the parties' intentions." *J.G. Wentworth S.S.C. Ltd. P'ship v. Callahan*, 2002 WI App 183, ¶11, 256 Wis. 2d 807, 649 N.W.2d 694.  "If the contract is unambiguous, our attempt to determine the parties' intent ends with the four corners of the contract, without consideration of extrinsic evidence." *Betz v. Diamond Jim's Auto Sales*, 2014 WI 66, ¶39, 355 Wis. 2d 301, 849 N.W.2d 292 (citation omitted).  "Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond

---

[10]  We note that WIS. STAT. § 181.13 (1967-68), provides in part that "[t]he initial bylaws of a corporation shall be adopted by its board of directors.  Thereafter bylaws may be adopted either by the members or the board of directors …."

13

the face of the contract and consider extrinsic evidence to resolve the parties' intent." *Id.* (citation omitted).

¶24 Where the language in the bylaws is ambiguous, subsequent conduct of the parties is highly probative of the intended meaning of that provision. In ***Zweck v. D P Way Corp.***, 70 Wis. 2d 426, 435, 234 N.W.2d 921 (1975), our supreme court stated:

> It is a well-settled principle of Wisconsin law that, where contract terms may be taken in two senses, evidence of practical construction by the parties is highly probative of the intended meaning of those terms and the court will normally adopt that interpretation of the contract which the parties themselves have adopted.

Here, Rev. Donnie Sims was the founder, incorporator, President, and one of the initial directors of the Church and continued as a director until his death. In 2016, Rev. Donnie Sims requested that the Church's board of directors, not the Church's members, adopt new bylaws. Moreover, in his original complaint, Sims alleged that the 2019 Bylaws were invalid because they were not adopted by either the members of the Church or the board of directors of the Church, which left the 2016 Bylaws to govern the Church. Thus, at some point, Sims believed that the 2016 Bylaws were properly adopted, which in effect amended the 1967 Bylaws. Further, when he became pastor after Rev. Donnie Sims's death, Sims sent letters to Redd and Stephens informing them that they were "being removed as a board of director" for the Church. Although Sims does not allege how, as pastor, he had power to remove a board member, that power had to come from the 2016 Bylaws, which provided that the "Pastor shall have the right to appoint or remove directors" because the 1967 Bylaws did not grant the Pastor such power.

14

¶25 Further, as noted above, in his amended complaint Sims alleged that in 2019, pursuant to Article XIV of the 2016 Bylaws, Rev. Donnie Sims adopted the 2019 Bylaws, thereby amending the 2016 Bylaws. Although Sims was a director of the Church, he did not challenge the board's adoption of the 2019 Bylaws until he filed his original complaint on October 10, 2021, which occurred after his father, Rev. Donnie Sims, died on August 5, 2020, and he was installed as Pastor of the Church on November 15, 2020. Thus, the 2019 Bylaws were the governing document for the Church for a little over three years before Sims filed his complaint and challenged their validity.

¶26 We conclude that the subsequent conduct of the parties is highly probative of the intended meaning of the provision in the 1967 Bylaws that the Church's Bylaws "may be amended or rescinded by a 2/3 majority vote" was intended to be a vote by the Church's board of directors, not its members.[11] We next address whether the Church's board of directors had authority to delegate its power to amend the 2016 Bylaws to Rev. Donnie Sims.

### III. The Board of Directors of the Church had authority to delegate amending the 2016 Bylaws to Rev. Donnie Sims

¶27 Before the circuit court and on appeal, the Church argues that in 2016 the Church's board of directors amended its bylaws and delegated the authority to amend the Church's bylaws to Rev. Donnie Sims. As noted above,

---

[11] We also conclude that alternatively it would be a reasonable interpretation, consistent with WIS. STAT. § 181.13, that the language in Article X of the 1967 Bylaws that the bylaws "of the Church may be amended or rescinded by a 2/3 majority vote" is that after the initial bylaws were adopted by the board of directors, either the board of directors or the members could adopt bylaws by a two-thirds majority vote. However, in any event, the subsequent conduct of the parties does not support an interpretation that only the Church's members could amend or rescind the bylaws.

Article XIV of the 2016 Bylaws states in part that Article V—which gave the Pastor the general oversight and supervision of the business and spiritual affairs of the Church, may not be amended except by the Pastor as led by the Word and the Spirit of God, or (i) as authorized by a unanimous vote of the [b]oard of [d]irectors and (ii) subsequently confirmed by a vote of at least two-thirds (2/3) of the voting membership who are in attendance of a special meeting of the Church.  Before the circuit court and on appeal, the Church argued that the Wisconsin Statutes give a corporation's board of directors the authority to amend a corporation's bylaws and that the statutes and the common law give a corporation's board of directors the power to delegate its authority to others.  It then stated that is what the Church did in 2016 by amending the Church's bylaws and giving Rev. Donnie Sims the authority to amend the bylaws.

¶28    Before the circuit court, Sims argued that the 2016 Bylaws are invalid because the 1967 Bylaws were amended without approval by the Church's board of directors or a two-thirds majority vote of the members of the Church.  He argued that WIS. STAT. § 181.1022(1) provides that any proposed amendment to a corporation's bylaws must be voted on by its members if the proposed amendment affects or changes the voting rights of the members.[12]  He then argued that because the Church's bylaws were amended in 2016 to change the voting rights of members in the Church it was inconsistent with that statute, and therefore, the

---

[12] WISCONSIN STAT. § 181.1022(1)(a) provides in part that "[t]he members of a class in a corporation are entitled to vote as a class on a proposed amendment to the bylaws if the amendment does any of the following:  (a) [a]ffects the rights … of that class as to voting ... in a manner different than such amendment would affect another class."  We agree with the Church's argument that the statute does not apply to this case because there is only one class of membership in the Church.

16

2016 Bylaws were void. Sims then argued that therefore, Rev. Donnie Sims did not have the authority in 2019 to amend the Church's bylaws.

¶29    Sims also argued that if the 1967 Bylaws were adopted by the Church's members, Rev. Donnie Sims would still not have the authority to amend the Church's bylaws. He argues that WIS. STAT. § 181.0206(2) provides that after the adoption of the initial bylaws, "no bylaw adopted by the members shall be amended or repealed by the directors, unless the bylaws adopted by the members shall have conferred such authority upon the directors." He then asserts that if the 1967 Bylaws were approved by members of the Church, the board of directors would not have the authority to amend those bylaws in 2016.

¶30    As Sims now concedes, WIS. STAT. § 181.13 (1967-68), which provides that the initial bylaws of the corporation had to be adopted by the board of directors applies, and therefore, any argument regarding the members adopting the initial bylaws is irrelevant. The circuit court accepted the Church's arguments and found that the board of directors had the power to delegate its authority to amend the bylaws to Rev. Donnie Sims and that is what the board did in the 2016 Bylaws.

¶31    On appeal, the Church points out that Sims argues on appeal that the delegation of the board's powers to amend the bylaws to Rev. Donnie Sims in Article XIV of the 2016 Bylaws is void because it is contrary to WIS. STAT. § 181.0801(3)(a). That statute provides that

> The articles of incorporation or bylaws approved by the members, if any, may authorize a person to exercise some or all of the powers which would otherwise be exercised by a board. To the extent so authorized such a person shall have the duties and responsibilities of the board, and the directors shall be relieved to that extent from such duties and responsibilities.

17

*Id.* The Church then states that Sims argues that because there is no evidence to demonstrate that the 2016 Bylaws were approved by the members of the Church as required in the statute, the Church's board of directors had no power to delegate the power to amend Article V of the 2016 Bylaws to Rev. Donnie Sims. It then argues that Sims did not make that argument in the circuit court, and therefore, he cannot properly raise it for the first time on appeal.

¶32 In his reply brief on appeal, Sims does not refute the Church's argument. Thus, we conclude that Sims has conceded the Church's argument. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (stating that failure to refute an argument constitutes a concession).

¶33 Moreover, we agree with the Church's argument that even if we consider Sims' argument, the argument is without merit. The Church argues that WIS. STAT. § 181.0801 does not state that the only form of delegation of powers that a corporation may use, is delegation by its members. It argues that the provision in the statute that Sims cites is within a section describing the basic duties and powers of a board of directors. It states that subsection (2) of the statute states the general rule that "all corporate powers shall be exercised by or under the authority of … its board." Sec. 181.0801(2). The Church then argues that boards of directors exercise all corporate powers unless they give authority to someone else to exercise them. The Church further asserts that subsection (3)(a) of the statute offers an alternative method of delegation of powers that would bypass the board of directors—where "bylaws approved by the members" "may authorize a person to exercise some or all of the powers which would otherwise be exercised by a board." Sec. 181.0801(3)(a). It argues that subsection (3) of the statute does not undermine the inherent power of a board of directors, recognized

18

in subsection (2) of the statue and is consistent with well-recognized law that a board of directors may delegate its authority.

¶34 Sims argues that the Church did not make the argument that WIS. STAT. § 181.0801(2) allows the board of directors to govern the Church affairs before the circuit court. We note that Sims is correct that the Church did not cite subsection (2) of the statute for that proposition in its original briefing before the circuit court on its motion to dismiss—rather, it cited subsection (3)(a) for that proposition. However, at the conclusion of the hearing on April 1, 2022, on the Church's motion to dismiss the amended complaint at which the parties made oral arguments to the circuit court, the court ordered the parties to file "short letter briefs referencing the documents and law the court should review and consider in ruling on the [church's] motion to dismiss."[13] In its letter brief, the Church argued that Sims "does not challenge the [Church's] argument that if the 2016 and 2019 Bylaws are invalid … the Church's business affairs will be governed by the Church's board of directors pursuant to [WIS. STAT. §] 181.0801(2)." It then quoted the statute "all corporate powers shall be exercised by or under the authority of, and the affairs of the corporation managed under the direction of, its board." Thus, we conclude that the record reflects that the Church did make this argument before the circuit court.

---

[13] CCAP entries reflect that at the hearing on April 1, 2022, the parties made their arguments and the court did order the parties to file short letter briefs. The court issued a written order on April 12, 2022, regarding the letter briefs. However, we note that there is no transcript of the hearing on April 1, 2022, in the appellate record, and instead, we take judicial notice of the CCAP entry for the April 1, 2022 hearing. *See Kirk v. Credit Acceptance Corp.*, 2013 WI App 32, ¶5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522 (recognizing that CCAP, an acronym of Wisconsin's Consolidated Court Automation Programs, reflects information entered by court staff of which the court may take judicial notice).

¶35 Moreover, before the circuit court and on appeal, the Church also argued that even absent the statute, the common law authorizes a board of directors to delegate its powers to others. It cited *Cassidy v. Uhlmann*, 63 N.E. 554, 556 (N.Y. 1902), where the court stated, "it is clear that a board of directors may delegate some of its powers to committees and individuals selected from the board. This is common practice in the management of … corporations." The Church also cited to Carol A. Jones, 2 *Fletcher Cyclopedia of the Law of Corporations* § 495 (2014), which notes, "The directors can delegate the power to transact not only ordinary and routine business, but business requiring the highest degree of judgment and discretion."

¶36 Sims does not refute the Church's argument in his reply brief, and therefore, we conclude that Sims has conceded the Church's argument. *See Charolais Breeding Ranches*, 90 Wis. 2d at 109. Thus, we conclude that the Church's board of directors had the power to delegate the power to amend the bylaws to Rev. Donnie Sims in the 2016 Bylaws, which he did in amending the 2019 Bylaws.

¶37 We next address the Church's alternative argument that if the 1967 Bylaws were invalid, the 2016 Bylaws would be the Church's initial Bylaws and they were properly adopted by the board of directors.

### IV. If the 1967 Bylaws were invalid, the 2016 Bylaws would be the Church's initial Bylaws and were properly adopted

¶38 As noted above, in its supplemental brief, the Church alternatively argues that, if the Church's members or its incorporator adopted the 1967 Bylaws, those bylaws would be invalid and of no legal effect. "By-laws of a corporation which are contrary to or inconsistent with its … governing statute, are *ultra vires*

and void, even though they may have been unanimously assented to by the stockholders or members." ***Security Sav. & Trust Co. v. Coos Bay Lumber & Coal Co.***, 219 Wis. 647, 653, 236 N.W. 187 (1935). It then asserts that if the 1967 Bylaws are invalid, the 2016 Bylaws would be the initial bylaws of the Church and those bylaws were properly adopted by the Church's board of directors under WIS. STAT. § 181.0206, which was in effect at the time.[14] The Church then argues that the 2016 Bylaws were subsequently properly amended in 2019 by the Church's board of directors under WIS. STAT. § 181.0206.[15]

¶39    By contrast, in his supplemental brief, Sims argues that the bylaws to amend the 1967 Bylaws in 2016 were approved by the members of the Church by custom and acquiescence. He cites ***Graebner v. Post***, 119 Wis. 392, 96 N.W. 783 (1903), and ***O'Leary v. Board of Directors, Howard Young Medical Center, Inc.***, 89 Wis. 2d 156, 166, 278 N.W.2d 217 (Ct. App. 1979), in support of his argument. He states that in Wisconsin "the court recognized adoption by custom and acquiescence where bylaws were tentatively approved by members and applied for a number of years, but never officially adopted." However, ***Graebner*** is distinguishable from this case. In ***Graebner***, a set of bylaws were prepared and approved at a stockholders' meeting. ***Id.***, 119 Wis. at 393. No other bylaws were thereafter or formally adopted by the board of directors. *See **id.*** Here, Sims does not allege that the 1967 Bylaws were prepared and approved at a meeting of the members. Further, unlike in ***Graebner***, subsequent bylaws—the 2016 and 2019

---

[14] WISCONSIN STAT. § 181.0206(1) provides "[t]he incorporators, members or board of a corporation shall adopt the initial bylaws for the corporation."

[15] WISCONSIN STAT. § 181.0206(2) provides in part "[a]fter the adoption of the initial bylaws under sub. (1), bylaws may be adopted either by the members or the board[.]"

21

Bylaws—were prepared and adopted by the board of directors. Additionally, the court in *Graebner* did not reference any statute that would govern who could adopt the initial bylaws of a corporation.

¶40     By contrast, in *O'Leary*, the plaintiffs alleged that the 1972 bylaws, as amended in 1975, were adopted by the membership by custom and acquiescence, and thus, under WIS. STAT. § 181.13, the board of directors lacked the power to amend them in 1977. *O'Leary*, 89 Wis. 2d at 165. This court affirmed the circuit court ruling "that only by formal adoption procedures, taken at a meeting of the members, could the membership have prevented the directors from exercising their power to amend." *Id.* at 165-66. The *O'Leary* court recognized the holding in *Graebner*, but stated that "[h]owever, to extend the concept to informal adoption by custom and acquiescence of bylaws regularly promulgated and adhered to for some uncertain length of time would be contrary to good policy." *Id.* at 166. Here, Sims makes the same argument that the *O'Leary* court rejected.

¶41     Thus, this court rejects Sims' argument that the members could adopt the 1967 Bylaws by custom and acquiescence. Therefore, we conclude that if the 1967 Bylaws were passed by the members of the Church, those bylaws would be invalid and the 2016 Bylaws would constitute the initial bylaws of the Church and were properly adopted by the board of directors pursuant to WIS. STAT. § 181.0206(1).

## CONCLUSION

¶42     For the reasons stated above, we conclude that: (1) the allegations in the amended complaint and the documents attached thereto, demonstrate that the 1967 Bylaws were properly adopted by the Church's board of directors; (2) the

1967 Bylaws provide that the bylaws may be amended by a two-thirds majority vote of the Church's board of directors; (3) the Church's bylaws were properly amended in 2016 and 2019; and (4) if the 1967 Bylaws were invalid, then the 2016 Bylaws would have been the Church's initial bylaws and they were properly adopted by the Church's board of directors. Thus, the 2019 Bylaws currently are the bylaws that govern the Church, and we affirm the circuit court's order dismissing Sims' complaint.

*By the* Court.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).